IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
FILE: 1:18 cv 52

**SHELBY LYNN CASH**, and
**BETTY JOE CASH BAYNE**,

Plaintiffs,

VS.

1) **LEES-MCRAE COLLEGE, INCORPORATED**;
2) **JON DRIGGERS**, Dean of Students, Lees-McRae College, Incorporated, in his Official and Individual Capacities;
3) **JEFFREY MERRILL**, Title IX Coordinator & Director of Compliance, Lees-McRae College, Incorporated, in his Official and Individual Capacities;
4) **JOSH GAISSER**, Assistant Dean of Students for Residence Life, Lees-McRae College, Incorporated, in his Official and Individual Capacities;
5) **ANDREW TAYLOR**, Adjunct Instructor, Lees-McRae College, Incorporated, in his Official and Individual Capacities,

Defendants,

---

***PLAINTIFFS' BRIEF IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS***

NOW COMES Counsel for the Plaintiffs herein, and respectfully submits to the Court the following Brief offered in opposition to the Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

This is a most serious case which, but for a mother who checked on her daughter, could well be a wrongful death action. It is a case about Shelby Cash, a young woman, who as a result of the way she was treated by the Defendants herein, tried to kill herself. The issue before the Court is whether the Plaintiffs, through their attorneys, have alleged sufficient facts and law, under the notice pleading rules of federal court, to demonstrate that their claims are more than mere fantasy and that they should be able to further demonstrate the legitimacy of their contentions through discovery.

The Defendants, and each of them, know precisely what they did to this young woman, and failed to do for this young woman. The Complaint herein, which contains more detail than required, summarizes what each did and did not do that resulted in the near demise of Shelby Cash. Defense counsel's efforts to cherry pick and rearrange facts and omit others when convenient, does not and will not change what occurred. These Defendants, individually and collectively, violated their duties to this young woman and her mother. They created and have run a shoddy Title IX program and have either had insufficient training to do so or have failed to bring to the college that which they were taught. They failed to protect Shelby Cash and provide her with a safe environment in which to live and learn. They failed to properly respond to her being subjected to sexual misconduct. They failed to respond when notified by Ms. Cash that her assailant was stalking her, harassing her and intimidating her. They failed to properly protect her and provide for her in the investigation of her allegations, the preparation of the allegations for hearing and the hearing itself and to schedule and make available a new hearing following

Ms. Cash's successful appeal. Ms. Cash, due to fear from her assailant, his friends and a College that had been non-responsive, ended up sleeping under her bed in her dorm room. Shelby Cash and her mother have suffered tremendously due to the negligent or intentional conduct of the defendants, individually and collectively. Defense counsel, in what is an obvious effort to throw everything up against the wall to see what sticks, asks this court to allow these men and this college to not even have to file an answer. The law, the facts and common sense require otherwise.

STANDARD OF REVIEW

The motion before the Court is one to determine whether the Plaintiffs have put forth to the defendants, and to the court, causes of action that are properly plead and put the defendants, and each of them, on notice of what they are being accused of having done, or failed to do. Federal civil cases are ones where notice pleading is the process and discovery occurs to weed out the weaknesses.

> A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, *Jordan v. Alternative Resources Corp*., 458 F.3d 332, 338 (4th Cir. 2006), considered with the assumption that the facts alleged are true, *Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000). And the legal sufficiency of a complaint is measured by whether it meets the standards for a pleading stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted).

*Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir., 2009).

In determining whether a complaint meets the requirements of Rule 12(b)(6), the backdrop to federal complaints is "notice pleading" that does not require that every fact known

be plead. Rather, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007). Rule 12(b)(6) analysis requires the Court to also consider Rules 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 8(d)(1) which provides that "no technical form is required." Furthermore, Rule 11 requires the complaint to be signed and by signing it the signature "certifies" (1) that the claims in the complaint are not asserted for collateral purposes; (2) that the claims asserted are "warranted;" and (3) that the factual contentions "have evidentiary support." *Giacomelli at* 193.

> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will **"be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense**. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not `show[n]' — `that the pleader is entitled to relief,'" as required by Rule 8. Iqbal, 129 S.Ct. at 1950 (alteration in original) (citation omitted) (quoting Fed.R.Civ.P. 8(a)(2)). The Court noted that even though Rule 8 "marks a notable and generous departure from the hyper-technical, code pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id.

*Id. at* 193 (emphasis added).

FACTS TAKEN AS TRUE

The Court is required to take all allegations in the five count complaint as true. Each count incorporates all allegations within the complaint. A summary of some of the facts establishes the following: Shelby Cash, a young woman with a psychological disability, and her mother, sought a university for Shelby to attend that could accommodate her special needs. In their efforts to locate an appropriate school, the Cash's contacted the Defendant Lees McRae as

a potential candidate. Both via telephone and through in person meetings, the Plaintiffs shared with the Defendant University that Shelby Cash had special psychological needs. The Defendant Lees McRae, by and through its agents and/or representatives agreed, and therefore contracted with the Plaintiffs, to provide Shelby Cash with an educational environment that, in addition to those promises and guarantees made to her as part of her general admission, some of which have been set forth in attachments to her complaint, promised her and her family it both could and would accommodate her special psychological needs. The Cash family relied on those promises in deciding to attend and pay tuition to the Defendant College. Lees McRae was paid, in part, by her mother (Plaintiff BJ Bayne) in exchange for Ms. Cash being admitted under these terms and conditions.

In furtherance of its contractual obligations to Shelby Cash's special psychological needs, the Defendant College assigned her a mental health professional (employed by and on staff with the Defendant College) and she was provided with a job working with the Defendant Driggers located within feet of her counselor's office. Ms. Cash, while an enrolled student, was the victim of sexual harassment. The school failed to adequately investigate and facilitate a final resolution to the allegations and did so in a way or ways that subjected the student to severe emotional trauma and emotional distress making the educational environment hostile and unsafe for her to continue as a student.

The Defendant College has a history of failing to investigate and report sexual assaults and misconduct. As set forth in Paragraph 92 of their Complaint, the Plaintiffs allege:

> Defendant College engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking

> prosecution and protection and from seeking to have sexual assaults fully investigated and/or set for hearing. Of note is that said College, from the time Title IX sexual harassment mandates became applicable, upon information and belief, claimed zero (0) incidents of sexual misconduct in its required Clary Reporting.

As a direct and proximate result of these actions and inactions, the student attempted to kill herself. The student claims that the school mismanaged her report of sexual harassment, that it has a history of doing so to others, and that she and her mother have suffered horribly as a direct result.

## TITLE IX LAW

To establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe ***or*** pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution. *Jennings. v. Univ. of N.C.,* 482 F.3d 686, 696 (4th Cir.2007) (en banc)(emphasis added); *see also Murrell v. Sch. Dist. No. 1, Denver, Colo.,* 186 F.3d 1238, 1246 (10th Cir. 1999). *Rouse v. Duke Univ.*, 869 F.Supp.2d 674 (M.D. N.C., 2012).

### A. Hostile Educational Environment

There is no "mathematically precise test" for determining if an environment is objectively hostile or abusive. *Harris,* 510 U.S. at 22, 114 S.Ct. 367. Instead, the "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale,* 523 U.S. at 81, 118 S.Ct. 998 (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367). These circumstances include (1) the frequency of

the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted from the harassment. *See Faragher,* 524 U.S. at 787–88, 118 S.Ct. 2275; *Harris,* 510 U.S. at 23, 114 S.Ct. 367; *Fairbrook Med. Clinic,* 609 F.3d at 328; *Sunbelt Rentals,* 521 F.3d at 315. This inquiry also "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale,* 523 U.S. at 81, 118 S.Ct. 998. "Conduct which is considered normal and appropriate in one setting may be deemed abusive or hostile in another." *Fairbrook Med. Clinic,* 609 F.3d at 328. *Freeman v. Dal-Tile Corp*., 930 F.Supp.2d 611 (E.D. N.C., 2013).

In this case, not only did the Defendants fail to properly investigate and resolve the complaint of verbal sexual harassment, they repeatedly failed to respond to Shelby Cash when she advised that her assailant and others were stalking her, intimidating her and otherwise violating the no-contact order. Ms. Cash was forced to try and get relief off-campus through the North Carolina Court system. At no point was she offered any assistance by the College. She ended up unable to attend classes and hiding under her bed. She withdrew from her classes and the college as a result of her overall treatment by the college and the defendants. As noted earlier, the Plaintiff has alleged that there is a history of non-reporting by the Defendants. *See* Paragraph 92 of Complaint. A reasonable juror could (and likely would) find that these facts constitute a hostile educational environment.

B. Deliberate Indifference

"In order to prove a deliberate indifference claim, Plaintiff "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious ... needs' (objective)." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104

(1976)). Unless ... [the] needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. *Estelle*, 429 U.S. at 105. A prisoner is not entitled to choose his course of treatment. *See Russell v. Sheffer*, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam).

As alleged, the Defendants and each of them, repeatedly failed to appropriately respond to Shelby Cash's sexual misconduct claim, her additional claims of intimidation, retaliation and harassment, and ultimately conducted a "hearing" that failed to protect and respect her right, as a victim of sexual misconduct, to not be forced to be directly confronted by her assailants and be berated by her assailant's mother. Shelby Cash and her mother went through a hearing during which they were forced to endure a mob of students outside the hearing room cheering for her assailants – the Defendant College and the Defendants did nothing. Defendant Taylor, who was a panel member in Ms. Cash's hearing, stated in front of the Plaintiffs that "all I need for a good weekend is liquor and loose women" and openly discussed with another panel member a candle scent known as "sweaty balls." Although the initial decision of the panel to dismiss Ms. Cash's sexual misconduct complaint has been reversed, the College has failed to reschedule her new hearing which she was granted following her appeal of the initial hearing.

Case law makes clear that verbal harassment can constitute severe or pervasive harassment. *E.g., Jennings v. University of North Carolina*, 482 F.3d 686, 697-698 (4th Cir. 2007) (finding that the plaintiff had alleged sufficient facts regarding primarily verbal harassment for a jury to find sufficiently "severe or pervasive" conduct); Other courts in other circuits follow this reasoning. *E.g., Krebs v. New Kensington-Arnold School District*, 2016 WL 6820402 (W.D. Penn. 2016) (holding that "the constant and pervasive harassment with sex based terms alleged to have endured by" the plaintiff "rose to the level required under Title IX"); *Price*

*ex rel. O.P. v. Scranton School District*, 2012 Case 2:15-cv-04163-MSG Document 22 Filed 01/19/17 Page 5 of 26 6 WL 37090 (M.D. Penn. 2012) (holding that plaintiff subject to repeated gender-based slurs had sufficiently alleged facts that satisfy the standard for a sexually hostile environment). *Fennell v. Marion Indep. Sch. Dist*., 963 F. Supp. 2d 623, 646 (W.D. Tex. 2013) ("Plaintiffs' allegation that other students repeatedly used these offensive and derogatory epithets . . . adequately alleges that Plaintiffs were subjected to severe and pervasive harassment."); *Theno v. Tonganoxie Unified School Dist. No. 464*, 377 F.Supp.2d 952, 968 (D. Kansas 2005) ("The court finds the school district's argument that the harassment is not actionable because it involved only name-calling and crude gestures, not physical harassment, to be without merit.").

Due to the sexual harassment in the case at bar, that included not only a verbal assault but subsequent intimidation, harassment and a mob-type crowd outside Plaintiff's "hearing," Ms. Cash was "effectively denied equal access to an institution's resources and opportunities," the key inquiry under Davis. 526 U.S. at 631. Of note is that despite the assailant's mother being allowed to loudly, repeatedly and aggressively berate the Plaintiffs and confront the Panel, Shelby Cash was denied the equal opportunity from having her mother (Plaintiff Bayne), also present during the hearing and despite efforts to do so, from being heard as the Panel silenced Plaintiff Bayne directing that if she attempted to speak she would be removed. Shelby Cash not only withdrew from her classes but also withdrew from the Defendant College because of the harassment. From these facts, a reasonable person could conclude that the harassment complained of by the Plaintiff, which extended over a period of several weeks created a hostile educational environment.

A student cannot be asked to sustain further cruelty to prove just how bad it is. For this reason, courts have recognized that harassment severe enough to deprive the victim of educational opportunities may meet the *Davis* standard without extending as long as the abuse to which Plaintiff in the instant case was subjected. *See, e.g., Vance v. Spencer Cty. Pub.Sch. Dist*., 231 F.3d 253, 259 n.4 (6th Cir. 2000) ("Within the context of Title IX, a student's claim of hostile environment can arise from a single incident.") (*quoting Doe v. School Admin*. Case 2:15-cv-04163-MSG Document 22 Filed 01/19/17 Page 8 of 26 9 Dist. No. 19, 66 F.Supp.2d 57, 62 (D.Me.1999); *Spencer v. Univ. of N.M. Bd. of Regents*, 15-cv00141-MCA-SCY (D.N.M. Jan. 11, 2016) (A single act of severe sexual harassment . . . can support a Title IX claim"). *See also, Harris v. Forklift Sys., Inc*., 510 U.S. 17, 22 (1993) (holding that civil rights protections against sexual harassment "come[] into play before the harassing conduct leads to a nervous breakdown").

## CONCLUSION

The Plaintiff respectfully submits that each of the counts of her Complaint are properly drafted based upon the law of North Carolina and of the United States. Each Count incorporates all allegations within the complaint to support the elements which are set forth. She has made a substantial showing, beyond what is required by notice pleading and Rules 8, 9, 10, 11 and 12(b)(6) of the Federal Rules of Civil Procedure. The Plaintiff has made some allegations (intentional/negligent infliction of emotional distress) in the alternative. She is permitted by law to do so. Additional evidence supporting each Count will be forthcoming and developed through discovery. The Defendants' Motion to Dismiss should be denied, each Defendant should be

ordered to answer the Complaint, and discovery should commence. The law and the facts require that result.

Respectfully submitted this 18th day of June, 2018.

/s/ Stephen P. Lindsay

______________________________

Stephen P. Lindsay
46 Haywood Street
Suite 200
Asheville, NC 28801
828-551-6446
spl@suttonlindsay.com
NC Bar: 13017

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this Motion for Extension of Time on counsel for the opposing party through the CM/ECF Pacer filing system.

This the 18th day of June, 2018.

/s/ Stephen P. Lindsay

______________________________

Stephen P. Lindsay
46 Haywood Street
Suite 200
Asheville, NC 28801
828-551-6446
spl@suttonlindsay.com
NC Bar: 13017