IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No. 1:18-cv-52

| | |
|---|---|
| SHELBY LYNN CASH, and BETTY JOE CASH BAYNE, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Reply in Support of Motion to<br>) Dismiss Pursuant to Fed. R. |
| LEES-MCRAE COLLEGE, INC., et al., | ) Civ. P. 12(b)(6).<br>)<br>) |
| Defendants. | ) |

In opposing dismissal, Plaintiffs misstate their burden as merely "to demonstrate that their claims are more than mere fantasy," (DE 9 at 2). The attempt to lower the threshold is telling.[1] As the Fourth Circuit held in *Francis v. Giacomelli*, a complaint must *plausibly* allege facts showing the pleader is entitled to relief. 588 F.3d 186, 193 (4th Cir. 2009) (affirming dismissal). "[A] complaint must contain more than labels and conclusions . . . . [N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted).

Plaintiffs do not respond to any of the arguments supporting dismissal of four of the five counts of the complaint. Without referencing Counts II-V or the

---

[1] "More than mere fantasy" is essentially the standard for a Rule 11 motion, which Cash elsewhere refers to, (DE 9 at 4). Defendants have not filed a Rule 11 motion, nor asked that the complaint be "withdrawn or appropriately corrected," Fed. R. Civ. P. 11(c)(2).

1

arguments to dismiss them, Plaintiffs state that "each of the counts of her Complaint are properly drafted . . . [and] incorporates all allegations within the complaint to support the elements which are set forth." (DE 9 at 10). This is no answer at all. In addition to the reasons previously stated, Plaintiffs' failure to respond constitutes waiver, and these four counts may be dismissed on that basis in addition to failure to state a claim. *E.g.*, *Mountain Land Properties, Inc. v. Lovell*, 46 F. Supp.3d 609, 621-22 (W.D.N.C. 2014) (dismissing two counts as waived for failure to respond to arguments supporting dismissal). To the extent Plaintiffs' response references anything that can be interpreted as relating to these four counts, no part of the response lifts the complaint over the threshold of plausibility.

Cash defends only her Title IX claim against Lees-McRae. (DE 9 at 6-10). Cash continues to stress that she subjectively felt that "the educational environment hostile and unsafe," (DE 9 at 5), but those allegations fail to plausibly plead an *objectively* hostile environment. Cash also contends that "the school mismanaged her report of sexual harassment," (DE 9 at 6), but fails to plausibly allege facts that Lees-McRae acted with deliberate indifference to the isolated incident of verbal harassment.

## COUNT I

A. <u>**Cash Fails To Plausibly Allege A Hostile Educational Environment.**</u>

Cash's one-page discussion contending she has plausibly alleged a hostile educational environment, (DE 9 at 6-7), materially misstates the law of Title IX. In

2

4813-9507-4155, v. 1
Case 1:18-cv-00052-MR-DLH   Document 13   Filed 06/25/18   Page 2 of 11

listing factors to consider whether an educational environment is objectively hostile, Cash correctly states the four identified in the Title VII context by the Supreme Court in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993), which the Supreme Court has reaffirmed in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998), and upon which the Fourth Circuit has relied in *EEOC v. Fairbrook Med. Clinic*, 609 F.3d 320, 328 (4th Cir. 2010) and *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). However, Cash then adds a fifth factor: "what psychological harm, if any, resulted from the harassment." (DE 9 at 7). While the Supreme Court did hold that would be relevant to the *subjective* component of a hostile environment claim, *Harris*, 510 U.S. at 23 ("The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive"), it would not affect the *objective* component unless the discriminatory environment "would seriously affect a reasonable person's psychological well-being," *id.* at 22; *see also Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 421 (4th Cir. 2014) (evidence plaintiff sought treatment for depression goes to subjective component of hostile environment claim). To be sure, Cash alleged that she was "subjected to severe emotional trauma and emotional distress," (DE 9 at 5), and relies heavily on her "psychological disability," (DE 9 at 4), in stressing the extent of her damages and the subjective component of a hostile educational environment. Showing Cash subjectively found the environment

3

hostile does nothing to plausibly allege that it was objectively "'so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school.'" (DE 4 at 8) (quoting *Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 650 (1999)). Under the correct standard, Cash alleges one instance of verbal harassment, that MR followed her around the cafeteria and across campus (apparently without speaking to her), and she believes he wrote "It's me – guess who" on a whiteboard somewhere on campus that Cash saw on the day before the Title IX hearing. (DE 4 at 8-10). Taking these meager allegations together, they do not plausibly allege an objectively hostile environment.

To be sure, Cash correctly notes that verbal harassment alone, (DE 9 at 8-9), or a single incident, (DE 9 at 10), can be sufficient to plausibly plead an objectively hostile environment. But Cash attempts to combine these propositions is an effort to lower her burden, without citing authority that a single instance of verbal harassment is sufficient to plead an objectively hostile environment. Every case Cash relies on (DE 9 at 8-10) is readily distinguishable on this basis. *Spencer v. Univ. of N.M. Bd. of Regents*, 2016 WL 10592223, at *6 (D. N.M. Jan. 11, 2016) (single incident of gang rape); *Doe v. School Admin. Dist. No. 19*, 66 F. Supp.2d 57, 62 (D. Me. 1999) (single incident of a teacher's sexual intercourse with highly intoxicated 15-year-old student); *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000) (years of verbal and physical harassment including being stabbed and forcibly undressed by other

4

students); *Fennell v. Marion Indep. Sch. Dist.* 963 F. Supp. 2d 623, 628-31 (W.D. Tex. 2013) (four years of verbal harassment by students and teachers); *Price v. Scranton Sch. Dist.*, 2012 WL 37090, *2-3 (W.D. Pa. Jan. 6, 2012) (repeated verbal harassment by multiple classmates over the course of an entire school year); *Theno v. Tonganoxie Unified School Dist. No. 464*, 377 F. Supp.2d 952, 954 (D. Kan. 2005) (four years of verbal harassment); *Krebs v. New Kensington-Arnold Sch. Dist.*, 2016 WL 6820402, at *1, 3 (W.D. Pa. Nov. 17, 2016) (three years of verbal harassment).[2] In these cases, an objectively hostile environment was shown by the alleged facts of prolonged verbal abuse or extreme but isolated incidents. Cash alleges nothing remotely equivalent, and her failure to do so falls below what is required to plausibly plead a claim for relief.

Cash also relies, (DE 9 at 7), on her allegation that Lees-McRae has "claimed zero (0) incidents of sexual misconduct in its required Clary reporting." (DE 9 at 6). Though the allegation may be relevant to the element of deliberate indifference (though Defendants would contend, insufficient standing alone), it has no relevance to whether Cash experienced an objectively hostile educational environment.

B.     **Cash Fails To Plausibly Plead Deliberate Indifference By Lees-McRae**

Cash's hodge-podge of claims that she has plausibly alleged facts supporting the element of deliberate indifference are difficult to parse. She "note[s]" Bayne was

---

[2] Cash misquotes the *Krebs* decision. (DE 9 at 8). Fully stated, the *Krebs* court held that "While infrequent name calling and bullying among adolescent peers at school may not always rise to the level of harassment required under Title IX, the constant and pervasive harassment with sex based terms . . . does." *Krebs*, 2016 WL 6820402, at*3.

5

4813-9507-4155, v. 1
Case 1:18-cv-00052-MR-DLH   Document 13   Filed 06/25/18   Page 5 of 11

not allowed to speak at the hearing, (DE 9 at 9), an allegation not contained in the complaint at all. Curiously, Cash discusses claims for violation of a prisoner's Eighth Amendment rights by deliberate indifference to a serious medical need. (DE 9 at 8).

Regardless, Cash's contentions that she has alleged specific facts supporting deliberate indifference are all unavailing. Cash repeatedly contends that Lees-McRae's employees did not protect her from being yelled at by MR's mother. (DE 9 at 8-9). Title IX imposes no duty on an institution to control the behavior of a student's parent; MR's mother's actions cannot demonstrate deliberate indifference on the part of Lees-McRae. Cash repeatedly contends that she was subjected to a crowd outside of the hearing room, (DE 9 at 8-9), but nowhere alleges that she requested that they be dispersed, or even quieted. Finally, Cash leans heavily on a single fact – that "the College has failed to reschedule her new hearing," (DE 9 at 8); *see also* (DE 9 at 2-3); (DE 9 at 5) ("The school failed to adequately . . . facilitate a final resolution to the allegations . . ."). As the complaint notes, Cash withdrew from the school before a new hearing was held.[3] The failure to schedule a new hearing for a withdrawn student's Title IX complaint does not plausibly allege that the college was acted with deliberate indifference, but rather that the administrative process was cut short by the student's withdrawal. Accordingly, Count I of Cash's complaint fails to state a claim.

---

[3] As previously explained, MR also withdrew from Lees-McRae, (DE 4 at 4 n.1), though that fact is concededly outside the complaint at this stage.

4813-9507-4155, v. 1

Case 1:18-cv-00052-MR-DLH   Document 13   Filed 06/25/18   Page 6 of 11

## COUNT II FAILS

Cash's makes no argument in support of her § 1983 claim. No allegation in the complaint does –or could– plausibly plead that any of Cash's constitutional or statutory rights were violated by state action. In fact, Cash specifically pleads that the Defendants are private actors. (DE 1 at 3, ¶11). Likewise, Cash makes no mention of her request for injunctive relief, which appears to be related to Count II alone.[4] Accordingly, Count II and its request for injunctive relief should be dismissed.

## COUNT III FAILS

Only Cash alleges a cause of action for breach of contract in the complaint, (DE 1 at 16). That only makes sense, as no contract exists between a college and an adult student's parent; an offer of admission cannot be accepted by the parent and the parent's financial contribution to tuition does not insert the parent into any possible two-party implied contract. Thus, the reference to Bayne's partial payment of Cash's tuition, (DE 9 at 5), is an irrelevancy to the breach of contract claim.[5]

---

[4] The allegations within Count II, (DE 1 at 15, ¶101) focus on procedural issues, as does the request for injunctive relief, (*id.* at 18-19). Thus, it appears that injunctive relief was requested solely with reference to her claim under Section 1983, although Cash's silence on Count II and injunctive relief obscures the issue.

[5] Bayne may be responding the argument that "the only relief requested on Bayne's behalf is punitive damages." (DE 4 at 20). As we explain, Bayne has no contract claim nor could she have one. To the extent Bayne seeks return of tuition as a remedy for her IIED or NIED claims, it is not available, as those claims compensate solely for severe emotional distress, which Bayne has not alleged.

7

4813-9507-4155, v. 1
Case 1:18-cv-00052-MR-DLH   Document 13   Filed 06/25/18   Page 7 of 11

In response to an argument that Cash fails to identify a contract, its specific terms, or how such terms were breached, (DE 4 at 13-16), the only term Cash purports to identify is a promise that Lees-McRae "could and would accommodate her special psychological needs." (DE 9 at 5). This is apparently a reference to Paragraphs 35 and 36 of the complaint. (DE 1 at 6-7).[6] The allegations that Lees-McRae "assured [Cash] that her psychological special needs would be accommodated" and that the school provided her "with special housing and access to the school therapist," (*id.*), do not plausibly allege the existence of a contract, or a term. Indeed, Cash seems to assert in her brief that an oral promise was made by unidentified "agents and/or representatives," (DE 9 at 5), of Lees-McRae, and not contained within the student handbook or some implied contract created by her admission as a student. But Cash's argument outside the language of the complaint that the promise was made "via telephone and through in person meetings," (DE 9 at 5), does not point to facts in her complaint identifying the substance of the specific term or how it was breached. Based on the allegations in the Complaint, it appears that if a promise was made that Cash would be provided special housing and access to the school's therapist, that promise was kept. (DE 9 at 5). If Cash means to allege a breach of contract on some other promise, she has failed to identify either the promise or how it was breached.

---

[6] Cash cites only paragraph 92 of her complaint in her entire response in opposition to the motion to dismiss. (DE 9 at 5-7).

## COUNT IV FAILS

Cash does not respond to the argument that no special duty is owed to her, (DE 4 at 16-17), that no facts showing a breach of any duty are alleged, (DE 4 at 17-18), that the conduct of third parties cannot breach any duty of Defendants, (DE 4 at 18-19), that university administrators have no special duty of care to students, (DE 4 at 19-20), or that (even a the stage of a motion to dismiss) allegations of intentional conduct cannot support a negligence claim under North Carolina law, (DE 4 at 20). Indeed, Cash makes no argument in support of her negligence claim at all.

## COUNT V FAILS

Bayne has not alleged severe emotional distress, nor responded to the argument she failed to do so and cannot maintain a claim of NIED or IIED based on her daughter's emotional distress, (DE 4 at 201-22).[7] Cash's allegations are categorically beneath the threshold for extreme and outrageous conduct and she fails to articulate the breach of any duty to support an NIED claim. The only response Cash seems to

---

[7] In Plaintiffs' "Introduction," there is a single reference to Bayne having "suffered tremendously due to the negligent or intentional conduct of the defendants, individually and collectively." It cites no paragraph of the complaint, which as previously noted, "alleges that Defendants 'did in fact cause severe emotional distress and/or damage to the Plaintiff[,] Shelby Cash,'" (DE 4 at 21) (quoting (DE 1 at 18, ¶124), but makes no similar allegation as to Bayne. Additionally, as we explain, (DE 4 at 21-22), the threshold for severe emotional distress in North Carolina is a "type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics and Gynecology Associates*, 327 N.C. 283, 305 (1990). Even Bayne's rhetoric outside the complaint's allegations does not rise to this level.

9

offer is that some of the Defendants knew about her "psychological disability," (DE 9 at 4), but she makes no argument that knowledge alone gives rise to any duty or that knowledge of her mental health renders Defendants' conduct extreme and outrageous. Cash's allegations that the Defendant's failed to prevent harm from others, (DE 1 at 8, ¶49), does not support a negligence claim. *E.g.*, *Hall v. Torresos II, Inc.*, 176 N.C. App. 309, 325, 626 S.E.2d 861, 871 (2006) (no duty to prevent harm to plaintiff from third party absent limited special relationships).

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court grant their motion to dismiss Plaintiffs' claims with prejudice.

This the 25th day of June, 2018.

Respectfully submitted,

/s/ *Katie Weaver Hartzog*
KATIE WEAVER HARTZOG
N.C. State Bar No. 32989
khartzog@cshlaw.com
CARL NEWMAN
N.C. State Bar No. 52943
cnewman@cshlaw.com
CRANFILL SUMNER & HARTZOG LLP
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: 919/828-5100
*Attorneys for Defendants*

10

4813-9507-4155, v. 1
Case 1:18-cv-00052-MR-DLH   Document 13   Filed 06/25/18   Page 10 of 11

CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2018, I electronically filed the foregoing *Reply in Support of Motion to Dismiss* with the Clerk of Court using the CM/ECF system, which will send notification to counsel of record below:

Stephen P. Lindsay
Kerstin Walker Sutton
Sutton & Lindsay, PLLC
46 Haywood Street, Suite 200
Asheville, NC 28801
spl@suttonlindsay.com
kws@suttonlindsay.com

CRANFILL SUMNER & HARTZOG LLP

/s/ *Katie Weaver Hartzog*
KATIE WEAVER HARTZOG
N.C. State Bar No. 32989
khartzog@cshlaw.com
CARL NEWMAN
N.C. State Bar No. 52943
cnewman@cshlaw.com
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: 919/828-5100
*Attorney for Defendants*