## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:18CV52

| | | |
|---|---|---|
| SHELBY LYNN CASH and BETTY JOE CASH BAYNE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| LEES-McRAE COLLEGE, INCORPORATED; | ) | **RECOMMENDATION** |
| JOHN DRIGGERS; JEFFREY MERRILL; | ) | |
| JOSH GAISSER; and ANDREW TAYLOR; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendants' Motion to Dismiss (# 3) pursuant to Federal Rule of Civil Procedure 12(b)(6). The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons addressed below, the Court recommends that Defendants' Motion to Dismiss be GRANTED.

## I.     Procedural Background

On March 5, 2018, Plaintiffs initiated this action in this Court by filing their Complaint with a jury trial demand. See Compl. (# 1). Plaintiffs assert the following causes of action: (1) a claim against the Defendant College for alleged violations of Title IX, (2) a claim against Defendant College alleging a violation of Plaintiff Cash's civil rights pursuant to 42 USC § 1983 for failure to train and/or supervise agents/or employees on sexual misconduct claims, (3) a claim against Defendant College for breach of contract, (4) negligence/gross negligence against all Defendants, and (5) negligent or intentional

infliction of emotional distress against all Defendants.  See id.

On May 18, 2018, Defendants filed their Motion to Dismiss (# 3) and Memorandum in Support (# 4).  On June 18, 2018, Plaintiffs filed a Response in Opposition (# 9).  On June 25, 2018, Defendants filed a Reply (# 13).

## II.    Factual Background[1, 2]

The facts, viewed in a light most favorable to Plaintiffs, are the following:  During all relevant times, Defendant Lees-McRae College, Incorporated ("Defendant College") was receiving federal funding, which is consistent with Title IX, 20 U.S.C. § 1681 et seq. Compl. (# 1) ¶ 30.  Defendant College had policies and customs in place that resulted in the deprivation of the rights of Plaintiff Shelby Lynn Cash ("Plaintiff Cash"), including her rights pursuant to Title IX and those derived therefrom.  Id. ¶ 31.  Defendant College is responsible for guaranteeing that its employees, officers, and agents are properly trained and supervised to do their jobs, which includes addressing Title IX sexual misconduct claims while also respecting the rights and reasonable expectations of its students.  Id. ¶ 32. Defendant College is accountable for the actions and omissions of its employees, officers, and agents.  Id. ¶ 33.

At the time of the complained of sexual harassment, Plaintiff Cash was a Junior at

---

[1] When evaluating a motion to dismiss, the Court must accept a plaintiff's alleged facts as true and view them in a light most favorable to her.  See Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996).  In this case, the facts are derived from Plaintiffs' Complaint (# 1).
[2] The Complaint frequently refers to "Plaintiff" without designating whether it is Plaintiff Cash or Plaintiff Bayne.  See Compl. (# 1).  Each Plaintiff played a very different role in the allegations. Thus, to the extent possible, the Court has looked at the context of the allegations to determine which Plaintiff is being referred to.

2

Defendant College. Id. ¶ 34. Plaintiff Cash transferred in from a community college, where she received her first two years of collegiate education. Id. The community college was close to Plaintiff Cash's home, which allowed her to live with her mother, Plaintiff Betty Joe Cash Bayne ("Plaintiff Bayne"), and her step-father. Id.

Prior to transferring to Defendant College, Plaintiff Cash was diagnosed with social anxiety mental health disorders and/or limitations. Id. ¶ 35. When looking for a college, this condition was a chief concern for Plaintiff Cash and her family, who were looking for a college facility, environment, and faculty/staff that would appreciate Plaintiff Cash's needs. Id. Defendant College was appealing to Plaintiffs due to its relatively small size, peaceful setting, and reputation for being student centered. Id.

Prior to pursuing admission at Defendant College, Plaintiff Cash and her family informed Defendant College of her mental health conditions, and they were assured that her special needs would be accommodated. Id. To accommodate Plaintiff Cash's mental health needs, Defendant College provided her with special housing and the ability to use the school therapist, which Plaintiff Cash was using when the events alleged herein occurred. Id. ¶ 36. The special accommodations that Plaintiff Cash received were known by one or more of the named individual Defendants. Id.

In conjunction with Plaintiff Cash's work-study program, she worked for Defendant John Driggers ("Defendant Driggers") and disclosed to him information about her social anxiety. Id. ¶ 37. On occasion, Defendant Driggers would have to excuse Plaintiff Cash from work to allow her to attend therapy, which was held in an office next to Defendant Driggers's office. Id.

3

At the time of the sexual misconduct in this case, MR was a student at Defendant College.  Id. ¶ 38.  MR was a freshman who was a popular athlete on Defendant College's basketball team.  Id.  MR was receiving an athletic scholarship and/or financial assistance to attend Defendant College.  Id.  During the times alleged herein, Defendant Jeffrey Merrill ("Defendant Merrill") served as a Director of Athletics who oversaw MR, in addition to being the Title IX Coordinator and a member of the Panel that heard the sexual misconduct case where MR was accused, and Plaintiff Cash was the victim.  Id.

On or about April 11, 2017, at about 1:00 a.m., Plaintiff Cash walked from an "E-Sports" event that was held in the Chaffee Building, which did not have an available restroom, and went to the nearby Theater Arts Building, where she could use the restroom.  Id. ¶ 39. While on her way to the Theater Arts Building, MR and another male(s) "verbally accosted" Plaintiff Cash in a sexual manner.  Id. ¶ 40.  Plaintiff Cash was in fear for her safety, so she went into the Theater Arts Building, entered the women's bathroom, and locked the door.  Id.

MR and the other male(s) followed Plaintiff Cash into the Theater Arts Building and yelled at her. Id. ¶ 41.  For example, they yelled, "Back that ass up, turn around you f—king bitch, you know you want some of this. Don't you want any?"  Id. Plaintiff Cash stayed in the bathroom for 15-20 minutes before she was able to get a cell signal and make phone contact with her boyfriend who came to assist her.  Id. ¶ 42

Plaintiff Cash and her boyfriend left the Theater Arts Building. Id. Plaintiff Cash and her boyfriend were encountered by MR and the others, who persisted in their verbal sexual harassment and threatening behavior.  Id.

4

At first, Plaintiff Cash and her boyfriend reported the incident to Defendant Josh Gaisser ("Defendant Gaisser"). Id. ¶ 43. Campus security then responded. Id. Finally, the Banner Elk Police Department responded. Id. MR was interviewed by Defendant College's campus security, by Defendant Gaisser, and others, which ultimately led to Plaintiff Cash being advised that "everything was taken care of." Id.

Later during the morning of April 11, Plaintiff Cash went to the therapist she had been assigned to by Defendant College to discuss the events that had taken place. Id. ¶ 44. Plaintiff Cash informed Defendant College therapist of the major impact the sexual harassment had on her. Id. Later that same day, Plaintiff Cash's mother, Plaintiff Bayne, came to Defendant College and met with her daughter and Defendant Gaisser to discuss the events that had transpired and the harm that had resulted. Id.

At the meeting, a representative of Oasis was present to help Plaintiff Cash and her mother.[3] Id. ¶ 45. At the meeting, Defendant Gaisser explained his view of the incidents as being merely a "mis-communication" and proposed that Plaintiff Cash, MR, and the others get together to work it out. Id. Defendant Gaisser got the "boys" in a separate room and suggested that Plaintiff Cash go into the room and sit with them so that the "boys" could apologize. Id. The representative from Oasis strongly advised against this type of mediation on the basis that it was contrary to the appropriate sexual conduct protocol. Id. Plaintiff Cash's mother, Plaintiff Bayne, a trained law enforcement officer with experience

---

[3] Oasis is a non-profit agency in Avery County that works with victims of domestic violence and sexual assault. Compl. (# 1) ¶ 45.

dealing with sexual assault victims, also objected to the suggestion by Defendant Gaisser. Id. Defendant Gaisser's proposed mediation solution was rejected by Plaintiffs. Id.

On or about April 17, Plaintiff Cash filed with Defendant Jeffrey Merrill ("Defendant Merrill") a formal Title IX complaint against MR. Id. ¶ 46. Defendant Merrill served, in part, as Defendant College's Title IX Coordinator. Id. Consequently, Defendant College issued a no-contact order, which was entered to prevent MR and the others from either directly or indirectly having contact with Plaintiff Cash. Id. ¶ 47

On or about April 19, 2017, Plaintiff Cash was eating lunch in the cafeteria when MR and others came in. Id. ¶ 48. MR saw Plaintiff Cash, and he intentionally sat down close to her, which was a violation of the no-contact order. Id. Plaintiff Cash was very upset by the no-contact violation, and she left the cafeteria. Id.

Later that same day, while Plaintiff Cash was at dinner with her boyfriend in the cafeteria, MR and others, again, came in and sat close to Plaintiff Cash. Id. This was another violation of the no-contact order. Id. Plaintiff Cash and her boyfriend moved away from MR and the others. Id. MR and the others then got up and moved to where Plaintiff Cash and her boyfriend had relocated. Id.

Later that evening, MR and others followed Plaintiff Cash through campus to the E-Sports program location. Id. This constituted a third violation of the no-contact order. Id.

The next morning, Plaintiff Cash advised Defendants Merrill, Driggers, and other administrators that the no-contact order was being violated by MR, and she was scared. Id. ¶ 49. Defendant Driggers stated that he would follow up with campus security, Defendant

6

Gaisser, and others, but Defendant Driggers failed to take any meaningful steps to provide protection or support to Plaintiff Cash or to prevent MR and others from their ongoing intimidation, harassing and/or otherwise retaliating against Plaintiff Cash, despite the fact that such actions were required by the policies of Defendant College and Title IX regulations in place at that time.  Id.

Plaintiff Cash underwent a full-blown psychological breakdown during which she isolated herself in her dorm room in fear that she was going to endure further harm.  Id. ¶ 50.  Plaintiff Cash was able to sleep, but it was only when she was under the bed.  Id.

Plaintiff Bayne talked Plaintiff Cash into getting a Domestic Violence Protective Order to prevent MR from having any contact with her.  Id.  Plaintiff Cash got the Order on or about April 21, 2017. Id.  Defendant College conducted little, if any, meaningful investigation into Plaintiff Cash's sexual harassment allegations, or of the allegations of intimidation, no-contact order violations, and/or stalking made by Plaintiff Cash against MR and others.  Id. ¶ 51.

On or about April 24, 2017, MR and others, again, violated the no-contact order by following Plaintiff Cash around the cafeteria. Id. ¶ 52.  On the same day, it is believed that MR wrote "It's me-guess-who" on a white board that Plaintiff Cash saw.  Id.  These incidents were reported by Plaintiff Cash to Defendant Driggers, yet he did nothing in response.  Id.  On April 25, 2017, a Title IX hearing was held.  Id. ¶ 53.

Plaintiff Cash was not given any guidance or support in preparation for the hearing. Id.  Defendant Driggers selected the location for the hearing, and it was a small conference room.  Id.  There was not a divider to protect Plaintiff Cash from being confronted by MR

and the others.  Id.  Participants in the hearing had to sit near each other and the panel members. Id.

Pursuant to the Title IX rules at Defendant College, the hearing panel had eight members.  Id. ¶ 54.  Defendant Driggers created a panel for Plaintiff Cash's hearing, which consisted of the following members:

- Defendant Driggers (Co-Chair)

- Defendant Merrill (Co-chair) (Title IX Administrator & Director of Athletic Compliance/NCAA Liason)

- Defendant Andrew Taylor ("Defendant Taylor") (Adjunct Professor)

- Savannah Ramsey (Admission Specialist)

- Meredith Tillman (RD[4] of Tennessee Residence Hall)

- Defendant Gaisser (Assistant Dean of Students)

- Donna Ballard (Database Manager in Admissions Office)

- Candace Silver (Director of Admissions)

Id.

Plaintiff Cash and her witnesses were not provided with separate rooms to utilize during breaks or while waiting to testify.  Id. ¶ 55.  In fact, Plaintiff Cash and her witnesses had to sit in a public hallway with MR, his family, friends, and supporters, in addition to those who had been accused, their family members, and supporters.  Id.  The overall tone and/or attitude of the crowd toward Plaintiff Cash and her family was hostility.  Id.

---

[4] The acronym "RD" is not defined in Plaintiffs' Complaint.  See Compl. (# 1).  The Court presumes that it refers to "Resident Director."

At the hearing, it was evident that many students were made aware of the private and confidential hearing, and they gathered in the hallway right outside the hearing room. Id. ¶ 56. The group was assembled to support MR and the others, and they were loud and aggressive with a "mob mentality" that proved to be intimidating to Plaintiff Cash and her family. Id.

It is believed that the commotion from the group was recorded by Defendant College's security cameras. Id. Campus security officer(s) were present, yet they made no attempts to control and/or remove the crowd. Id. The individual Defendants were aware of the crowd, but they took no steps to protect Plaintiff Cash and her family, remove the crowd, or otherwise minimize the hostile environment. Id.

At the hearing, MR's mother was permitted to attend with MR. Id. ¶ 57. The established rules prohibited MR's mother from talking or addressing the Panel Members or participants, but MR's mother was permitted to loudly and aggressively confront Plaintiff Cash and her mother, Plaintiff Bayne, speaking to each of them directly and angrily. Id. Neither Defendant Driggers nor his co-chair, Defendant Merrill, took any meaningful steps to protect Plaintiff Cash and/or her mother, Plaintiff Bayne, from the verbal assault by MR's mother. Id.

Panel Member Tillman was permitted to sit on the Panel despite Plaintiff Cash's objection that Panel Member Tillman was a close friend with MR and the others who were accused. Id. ¶ 58. Panel Member Tillman talked with MR and the others who were accused about the case. Id.

During a break, Defendant Taylor made a patently offensive, sexual, and

9

inappropriate statement so loud that Plaintiff Cash and her mother, Plaintiff Bayne, could hear that "all I need for a good weekend is liquor and loose women" and discussed candle scents known as "sweaty balls" with another Panel Member. Id. ¶ 59. At several instances during the breaks, the crowd cheered loudly for MR and the others who had been accused. Id. ¶ 60.

Defendants took no steps to dissolve the crowd, quiet the crowd, or protect Plaintiff Cash and her mother, Plaintiff Bayne, from the members of the crowd. Id. The Panel ultimately found that MR and the others were "not responsible for violating the sexual harassment policy." Id. ¶ 61. One of the reasons for this decision was an improper fear by Defendants and the other non-defendant Panel Members of racial repercussions in the event they found MR, an African American, "responsible" for sexually harassing, intimidating, and/or retaliating against Plaintiff Cash who is "white." Id.

After the hearing, the environment at Defendant College campus was intolerable and unaccommodating towards Plaintiff Cash. Id. ¶ 62. Consequently, Plaintiff Cash withdrew from her classes and left Defendant College. Id.

Plaintiff Cash appealed the Panel's decision, which was overturned. Id. ¶ 63. A new hearing has been ordered, but the hearing has not yet been scheduled. Id.

Plaintiff Cash has suffered monumental personal injury and psychological harm. Id. ¶ 64. This harm has led to suicidal ideation, attempted suicide, a formal diagnosis of post-traumatic stress disorder (PTSD), hospitalization, in-patient treatment, and intense psychological intervention and treatment, all of which are the direct and proximate consequence of Defendants' conduct. Id.

Defendant College and/or any of the other Defendants did not provide Plaintiff Cash with a written report of the investigation performed.  Id. ¶ 65.  On or about November 14, 2017, Plaintiff Cash and her family filed a complaint with the United States Department of Education, Office for Civil Rights ("OCR"), which alleged that Defendant College did not promptly and appropriately react to the alleged sexual harassment, intimidation, and/or retaliation causing Plaintiff Cash, a student, to be excluded from participation in or being denied benefits of, or being subjected to discrimination on the basis of sex, in any district education programs or activities, in violation of Title IX implementing 34 C.F.R. § 106.31. Id. ¶ 66.  That complaint remains pending with the OCR.  Id. Defendant College failed to adopt grievance procedures that include appropriate due process standards and provide for the prompt and fair resolution of student complaints under Title IX, in violation of the Title IX implementing regulation:  34 C.F.R. § 106.8(b). Id. ¶ 67.

Plaintiff's personal damages, which include damages evolving from her psychological distress, loss of stature in the community, and harm to her reputation, have not been remedied.  Id. ¶ 68.  Plaintiff underwent sex-based harassment, which was severe, pervasive, and objectively offense.  Id. ¶ 69.  The sex-based harassment Plaintiff endured deprived her of access to the educational opportunities or benefits of Defendant College. Id. 70.  Defendant College officials, which include Defendants Driggers, Merrill, and Gaisser, possessed the authority to take remedial action to correct the sex-based harassment.  Id. ¶ 71.  Defendant College and the individual Defendants had real knowledge of the sex-based harassment.  Id. ¶ 72.

Defendant College and Defendants Driggers, Merrill, and Gaisser had both actual

and constructive knowledge that prior to attending Defendant College, Plaintiff Cash suffered from and was diagnosed with social anxiety and was in therapy at Defendant College to treat the condition.  Id. ¶ 73.  Defendant College and the individual Defendants reacted with deliberate indifference to the sex-based harassment toward Plaintiff Cash with knowledge of her special psychological needs.  Id. ¶ 74.

Because Plaintiff Cash became afraid to go to classes and participate in extra-curricular activities and social functions, she withdrew from attendance at college events. Id. ¶ 75.  Plaintiff Cash also became unable to participate academically in any real way because it got difficult, if not impossible, to concentrate in the classroom.  Id. ¶ 76.  Plaintiff Cash spent hours each day in her room under the bed, as opposed to attending class to get instruction and earn course credit.  Id. ¶ 77.

Considering the non-responsiveness of Defendant College and its employees, Plaintiff Cash lost faith that Defendant College would or could protect her, ensure her safety, or take her or her suffering seriously.  Id. ¶ 78.  Plaintiff Cash felt compelled to leave the school to avoid the ongoing hostile environment.  Id. ¶ 79.

The way these incidents were handled by Defendants has led to an environment where future reasonable students in Plaintiff Cash's circumstances will be discouraged from reporting sexual harassment.  Id. ¶ 80.  As a direct and proximate result of the harassing educational environment caused by Defendants' deliberately indifferent response to the sexual harassment, intimidation, retaliation, subsequent harassment, and violations of her Fourteenth Amendment rights, Plaintiff Cash has endured and continues to endure psychological damage, emotional distress, loss of stature in her community, damage to her

12

reputation, and a negative impact on her future relationships. Id. ¶ 81.

Plaintiff Cash has required continuing counseling and increased levels of medication for her depression and anxiety, which were caused by Defendants' conduct and the resulting harassing educational environment. Id. ¶ 82. Plaintiff Cash has also been deprived of a normal college education because of Defendants' conduct and the resulting educational environment. Id. ¶ 83. Finally, Plaintiff Cash has been harmed by missing college educational opportunities, and her future earning capabilities have been harmed by Defendants' conduct and the consequential hostile educational environment she was forced to undergo. Id. ¶ 84.

### III. Legal Standard

The central issue for resolving a Federal Rule of Civil Procedure 12(b)(6) motion is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion, the court accepts the allegations in the complaint as true and construes them in the light most favorable to plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192. Although a court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Consumeraffairs.com, 591 F.3d

13

at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor will mere labels and legal conclusions suffice. Id. Federal Rule of Civil Procedure 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; accord Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## IV.     Discussion[5]

### A.  Plaintiffs fail to plausibly state any federal law claims.

#### 1.   Count Two fails because Defendants are not state actors.

Defendants initially argue that the Complaint fails to plausibly plead any federal claims. Defs.' Mem. Supp. (# 4) at 5-12. Defendants contend that Plaintiff Cash's § 1983

---

[5] In their Complaint, Plaintiffs refer to "Plaintiff" without further identification. See Compl. (# 1). The Court has looked to the context of the allegations to determine exactly which Plaintiff is being referred to.

14

claim fails because Defendants are not state actors.  Id. at 5-7.  Defendants conclude that Count Two[6] of the Complaint must be dismissed for failure to state a claim.  Id. at 7.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts that are sufficient to establish (1) the violation of a right secured by the Constitution and laws of the United States; and (2) it was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).  To be held liable under § 1983, a party must be said to be a state actor, so that the allegedly unconstitutional conduct can fairly be attributed to the State.  Cox v. Duke Energy Inc., 876 F.3d 625, 633 (4th Cir. 2017).  When assessing whether a person is acting under color of state law, "the nature of the act performed is controlling."  Revene v. Charles Cty. Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).  Private parties are not subject to § 1983 liability for alleged constitutional violations unless there is a showing that the private party "acted in concert with state actors."  Rendell-Banker v. Kohn, 457 U.S. 830, 838 n.6 (1982); see Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) ("[T]he under-color-of -state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks omitted)).

In the instant case, Plaintiff Cash alleges that her Fourteenth Amendment rights were violated.  Compl. (# 1) ¶¶ 98-99, 102, 104.  Plaintiff Cash further alleges that Defendant College is a federally-funded educational facility that is subject to the Title IX rules and mandates.  Id. ¶ 96.  The Complaint, however, does not allege that Defendants

---

[6] Count Two alleges a failure to train and/or supervise agents and/or employees on sexual misconduct claims as to Defendant College.  Compl. (# 1) ¶¶ 95-104.

are state actors or that they acted pursuant to a state "statute, ordinance, regulation, custom." 42 U.S.C. § 1983; <u>see</u> Compl. (# 1); <u>see also</u> <u>Rendell-Baker</u>, 457 U.S. 838-43 (finding no state action where teachers sued a private college under § 1983 where the State paid the tuition of the students). Defendants consist of Defendant College, which Plaintiffs allege is a "private educational institution." Compl. (# 1) at 3 ¶ 11. The other Defendants are Defendant College's employees. <u>See</u> <u>id.</u> at 3-4 ¶¶ 12-19.

The Court will now address the contention that a private college, by their adoption of the Title IX grievance procedures, becomes a state actor. "[T]he courts that have considered this issue agree that private colleges are <u>not</u> state actors by virtue of their adoption of Title IX grievance procedures." <u>Doe v. Case Western Reserve Univ.</u>, No. 1:17CV414, 2017 WL 3840418, at *10 (N.D. Ohio Sept. 1, 2017) (emphasis added).

In sum, Plaintiffs cannot establish that any deprivation of federal rights was the result of state action because Defendant College and its named employees are not state actors. <u>See</u> <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922, 937 (1983) ("[T]he party charged with the [violative conduct] must be a person who may fairly be said to be a state actor."). Consequently, Count Two of the Complaint should be dismissed.

### 2. Count One fails because Plaintiffs fail to plausibly allege a hostile educational environment or deliberate indifference.

Next, Defendants argue that Plaintiffs' Complaint fails to plausibly allege a hostile educational environment or deliberate indifference. Defs'. Mem. Supp. (# 4) at 7-12. Defendants contend that even taking Plaintiff Cash's allegations as true, they fail to

16

establish an objectively hostile educational environment under Title IX.[7]  Id. at 8. Defendants conclude that Count One[8] should be dismissed.  Id. at 12.

Title IX of the Education Amendments Act of 1972 provides that "[n]o person in the United States, shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a); accord J.W. Johnson Cty. Bd. of Educ., No. 5:11-V-707-D, 2014 WL 4771613, at *6 (E.D.N.C. Sept. 24, 2014). There is an implied private right of action under Title IX.  Cannon v. Univ. of Chicago, 441 U.S. 677, 709 (1979).

To state a Title IX hostile educational environment claim,  a plaintiff must allege that (1) she was a student at an educational institutional receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile or abusive environment in an educational program or activity, (4) there is a basis for imputing liability to the institution.  Jennings v. Univ. of N. C., 482 F.3d 686, 695 (4th Cir. 2007) (en banc).  An institution can be held liable for deliberate indifference when "at a minimum, [it] cause[s] students to undergo harassment or make[s] them liable or vulnerable to it."  Davis v. Monroe Cty. Bd. of Educ., 526 U.S.

---

[7] "Congress modeled Title IX [of the Education Amendments] after Title VI of the Civil Rights Act of 1964, and passed Title IX with the explicit understanding that it would be interpreted as Title VI was."  Fitzgerland v. Barnstable Sch. Comm., 555 U.S. 246, 258 (2009) (internal citation omitted) (citing Cannon v. Univ. of Chicago, 441 U.S. 677, 694-96 (1979)).  Therefore, the Court can look to case law interpreting Title VI for guidance evaluating a claim raised under Title IX. See Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007) (en banc).
[8] Count One alleges a violation of Title IX against Defendant College.  See Compl. (# 1) ¶¶ 85-94.

629, 645 (1999) (internal quotation marks and alterations omitted); accord Rouse v. Duke Univ., 535 F. App'x 289, 293 n.* (4th Cir. 2013) (per curiam).

"Sexual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate." Jennings, 482 F.3d at 695. Harassment is deemed to reach the severe or pervasive level when it rises to the level of "an environment that a reasonable person would fine hostile or abusive" and the victim "subjectively perceive[s] . . . to be abusive." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

In the instant case, in pertinent part, Plaintiffs allege the following: the sex-based harassment and way it was handled by Defendants, was so severe, pervasive, and objectively offensive that it deprived Plaintiff Cash of access to educational opportunities or benefits provided by Defendant College. Compl. ¶ 86. Defendant College created and/or allowed to exist, and/or subjected Plaintiff Cash to a hostile educational environment, which violated Title IX. Id. ¶ 87. In particular, Plaintiff Cash alleges that (a) she was the member of a protected class; (b) she was subjected to sexual harassment and retaliation by another student(s); (c) she was subjected to harassment because of her sex; and (d) she was subjected to a hostile educational environment created by Defendant College's lack of policies/procedures and the failure to properly investigate and/or address the sexual misconduct, subsequent harassment, retaliation and/or intimidation. Id.

Plaintiffs further allege that Defendant College and its officials and/or agents had actual knowledge of the sexual misconduct and resulting harassment Plaintiff Cash endured that was created by its failure to investigate, enforce, hear and fully resolve her complaint

18

in a timely manner.  Id. ¶ 88. Defendant College's failure resulted in Plaintiff Cash being excluded from participation in and being denied the benefits of and being subjected to discrimination in violation of Title IX.  Id. ¶ 89.  Defendant College failed to take steps to resolve the sexual harassment complaint and acted with deliberate indifference toward her. Id. ¶ 90.  Defendant College persisted in its actions/inaction and failed to handle the situation as required by Title IX.  Id. ¶ 91.  Defendant College's pattern of behavior was designed to discourage students and parents of students who had been sexually assaulted from seeking prosecution/protection and from seeking to have the sexual assaults fully investigated and/or set for hearing.  Id.  Defendant College's policy and/or practice constituted disparate treatment of females.  Id. ¶ 93.  Plaintiff Cash has suffered emotional distress, psychological damage, and her standing in the community has suffered.  Id. ¶ 94.

Defendants argue that Plaintiffs' allegations, even if true, fail to state a claim under Title IX.  Defs.' Mem. Supp. (# 4) at 8.[9]  Viewing Plaintiffs' allegations in a light most favorable to them, the Court concludes that Plaintiff has failed to allege a hostile educational environment claim under Title IX for at least two reasons.

First, Defendant College took timely measures to end the harassment once they were aware of it.  See Willis v Brown Univ., 184 F.3d 20, 26 (1st Cir. 1999) ("If the institution takes timely and reasonably measures to end the harassment, it is not liable under Title IX for prior harassment.").  In the Complaint, Plaintiff Cash alleges that she first interacted with MR and the other male(s) around 1:00 a.m. on April 11, 2017. See Compl. ¶¶ 39-42.

---

[9] In their Response in Opposition, Plaintiffs defend only their Title IX claim.  See Pls.' Resp. Oppos. (# 9).

Plaintiff Cash reported the incident to Defendant Gaisser.  Id. ¶ 43.  First, campus security responded, and then Banner Elk Police Department responded.  Id.  MR was interviewed by Defendant College campus security, Defendant Gaisser, and others.  Id. On or about April 17, Plaintiff Cash filed a formal Title IX complaint with Defendant Merrill against MR.  Id. ¶ 46.  In response, Defendant College issued a no-contact order preventing MR and the others from directly or indirectly having any contact with Plaintiff Cash.  Id. ¶ 47.

Second, Plaintiffs have failed to allege that Defendant College's actions were sufficiently severe or pervasive to create a hostile or abusive environment. See Davis, 526 U.S. at 650 (To be actionable, the discrimination must be "so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school.").  Plaintiffs allege that on April 11, 2017, MR and another male(s) "verbally accosted" Plaintiff Cash "in a sexual manner."  Compl. (# 1) ¶ 40. MR and the other male(s) followed Plaintiff Cash into the Theater Arts Building and yelled at her, among other things, "back that ass up, turn around you f---king bitch, you know you want some of this.  Don't you want any?" Id. ¶ 41.  When Plaintiff Cash left the building, she and her boyfriend ran into MR and the others who continued their verbal harassment and threatening behavior. Id. ¶ 42.

Plaintiff Cash reported the incidents to Defendant Gaisser, and he contacted campus security and the local police department.  Id. ¶ 43.  Later that day, Defendant Gaiser met with Plaintiff Cash and her mother.  Id. ¶ 44.

Plaintiffs allege that on April 19, 2017, MR sat near Plaintiff Cash in the cafeteria two times and then followed her on campus.  Id. ¶¶ 48, 52.  On April 24, 2017, Plaintiffs

20

allege that MR followed Plaintiff Cash on campus and someone, thought to be MR, wrote "It's me—guess who" on a whiteboard.  Id. ¶ 52.

The Court concludes that these allegations are not sufficient to allege a hostile or abusive environment.  These allegations do not demonstrate conduct that is "so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school." The remaining allegations in Plaintiffs' Complaint relate to the actual Title IX hearing itself, which also fail.  See Frazier v. Fairhaven School Comm., 276 F.3d 52, 67 (1st Cir. 2002) ("In the absence of conduct creating a sex-based hostile educational environment, laxity on the part of school officials in investigating an incident is not actionable under Title IX.").

In sum, Plaintiff Cash has failed to state a claim for relief under Title IX. Consequently, Count One of Plaintiffs' Complaint should be dismissed. See Davis, 526 U.S. at 649 ("In an appropriate case, there is no reason why courts . . . could not" resolve a Title IX claim on a motion to dismiss.).

3. **If the Court denies Defendants' motion to dismiss Count One, in the alternative, Plaintiff Cash lacks standing to seek injunctive relief on that claim.**

Defendants next argue that if Count One is not dismissed, Plaintiff Cash lacks standing to seek injunctive relief on that claim.  Defs.' Mem. Supp. (# 4) at 12-13.  To invoke the jurisdiction of the federal courts, a plaintiff must meet the threshold requirement of Article III of the Constitution by alleging an actual case or controversy.  City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).  The Article II case-or-controversy requirements require a plaintiff to demonstrate (1) she has suffered an "injury in fact" that

21

is (a) concrete and particularized and (b) actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the injury will be redressed with a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (4th Cir. 2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

In this case, in pertinent part, Plaintiffs allege that "[t]he manner in which these incidents were mishandled by the Defendants has caused an environment in which future reasonable students in Plaintiff [Cash's] circumstances will be chilled from reporting sexual harassment." Compl. (# 1) ¶ 80. Plaintiff Cash seeks the following related relief:

> Injunctive relief requiring Defendant College to take effective steps to prevent sex-based discrimination and harassment in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it, requiring proper training and administration of sexual conduct allegations, proper hearing of said complaints and proper treatment of victims of sexual misconduct[.]

Id. at 18-19.

Plaintiffs' allegations that future students in Plaintiff Cash's position will be chilled from reporting sexual harassment are not sufficient to state a "concrete and particularized" injury. See Ansley v. Warren, 861 F.3d 512, 517 (4th Cir. 2017) (quoting Lujan, 504 U.S. 560-61). Plaintiff Cash alleges that she has withdrawn from Defendant College. See Compl. (# 1) ¶ 79. Moreover, Plaintiff Cash does not allege a present intention to re-enroll. See Compl. (# 1). Consequently, this is not an alleged injury to Plaintiff Cash, and injunctive relief will not redress her injury. See Williams v. Board of Regents of Univ.

22

Sys. of Ga., 477 F.3d 1282, 1302 (11th Cir. 2007) (holding that the plaintiff lacked standing to pursue his injunctive relief on the basis that the threat of future harm to the plaintiff and other students "[was] merely conjectural").

### B. Plaintiffs fail to plausibly allege any State law claims.

This Court has pendant jurisdiction over Plaintiffs' State law claims. See United Mine Workers of Am. v. Gibbs, 338 U.S. 715, 726 (1966) ("[P]endant jurisdiction is a doctrine of discretion, not of plaintiff's right."). The undersigned RECOMMENDS that the presiding District Judge decline to exercise supplemental jurisdiction over Plaintiff's State laws claims. In the event the presiding District Judge elects to address Plaintiffs' State law claims, they will be taken up.

The Court recognizes that with respect to Plaintiffs' State law claims, this Court is bound to apply State law to all substantive issues. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938) (recognizing that a federal court is to apply the law of the forum state when adjudicating non-federal issues). In this case, the Court will apply North Carolina law to Plaintiffs' State law claims.

### 1. Plaintiffs fail to allege breach of any term of a valid contract.

Defendants argue that Plaintiffs' Complaint contains neither allegations of any specific terms of the alleged "express and implied contacts" between Plaintiff Cash and Defendant College nor how Defendant College "breached the aforementioned express and/or implied contract." Defs.' Mem. Supp. (# 4) at 13-16. Moreover, Count Three of the Complaint does not allege the breach of any term because it fails to identify any contractual terms. Id. at 14.

23

In North Carolina, the elements of a breach of contract claim are (a) the existence of a valid contract and (b) a breach of the terms of the contract.[10] Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011). With a valid contract, "the parties must assent to the same thing in the same sense, and their minds must meet as to all terms." Boyce v. McMahan, 208 S.E.2d 692, 734 (N.C. 1974) (internal quotation marks omitted).

In the instant case, Plaintiffs allege that "[t]he Defendant College created express and implied contracts with [ ] Plaintiff [Cash] when Plaintiff [Cash] accepted an offer of admission to Lees-McRae College and paid, or caused to be paid, the tuition and fees. Compl. (# 1) ¶ 106. Plaintiffs further allege that "[t]he terms and conditions of this contract included, but are not limited to, those promises, rules and procedures set forth and established in the Student Code of Conduct and the Rules and Regulations of the College.[11] Id. ¶ 107. Plaintiffs conclude that "[t]he Defendant College breached the aforementioned express and/or implied contract or contracts with [ ] Plaintiff [Cash]." Id. ¶ 110.

The Court finds Ryan v. Univ. of N.C. Hospitals, 494 S.E.2d 789 (N.C. Ct. App. 1998), to be instructive on this issue. In Ryan, the North Carolina Court of Appeals held that to state a breach of contract claim, the Plaintiff "must point to an identifiable contractual promise that the [Defendant] failed to honor." Id. at 791; see Krebs v. Charlotte

---

[10] Where the complaint alleges both of these elements, it would be error to dismiss a breach of contract claim under Rule 12(b)(6). Woolard v. Davenport, 601 S.E.2d 319, 322 (N.C. Ct. App. 2004).

[11] When evaluating the plausibility of a claim, the district court may "consider documents attached to the complaint, see Fed. R. Civ P. 10(c), in addition to those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)). The Student Handbook is attached to the Complaint (# 1) at 20-22 and Defendants' Memorandum in Support (# 4) Ex. 1.

School of Law, LLC, No. 3:17-CV-00190-GCM, 2017 WL 3880667 (W.D.N.C. Sept. 5, 2017) (Failure to allege the specific contract terms which were breached by the Defendants . . . obviously fall[s] short of the line of plausibility of entitle[ment] to relief.) (internal quotation marks omitted). The Court ultimately found that the Plaintiff had alleged facts sufficient to support a breach of contract claim because he alleged a specific aspect of that contract that was breached. Ryan, 494 S.E.2d at 791.

In this case, as noted above, Plaintiffs summarily allege only that the express or implied contracts were breached. See Iqbal, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and citation omitted).

Plaintiff's argument that the pages of the Student Code of Conduct attached to her Complaint are terms of a contract between her and Defendant College also must fail. This argument is inconsistent with North Carolina law. See Giuliani v. Duke Univ., No. 1:08CV502, 2009 WL 1408869, at *3 (M.D.N.C. May 19, 2009) ("Non-binding student policy manuals are not binding contracts."); Love v. Duke Univ., 776 F. Supp. 1070, 1075 (M.D.N.C. 1991) aff'd, 959 F.2d 231 (4th Cir. 1992) (Duke's academic bulletin was not a binding contract).

The Student Code of Conduct in this case also fails to constitute a contract by its own terms. The Student Code of Conduct provides that Defendant College "reserves the right to make changes in the provisions of [the Student Handbook]." Defs.' Mem. Supp. (# 4) Ex. 1 at 2. Therefore, because the Student Code of Conduct could be altered by Defendant

College at any time, without consideration, it was not a valid and enforceable contract.  See Biggs v. Ocwen Loan Servicing, LLC, No. 1:14CV783, 2015 WL 4651809, a *4 (M.D.N.C. Aug. 5, 2018) ("It is established law that an agreement to modify the terms of a contract must be based on new consideration or on evidence that one party intentionally induced the other party's detrimental reliance.") (quotation omitted).  In addition, the Student Code of Conduct specifically refers to itself as "outlin[ing] the Student Code of Conduct . . . while providing general information  . . . Use this publication as a resource manual[.]"  Defs.' Mem. Supp. (# 4) Ex. 1 at 6. Therefore, Plaintiff Cash's argument that the Student Code of Conduct constitutes a contract between her and Defendant College, see Compl. (# 1) ¶ 107, must fail.

Defendants contend that even if the handbook is part of a contract between Plaintiff Cash and Defendant College, Plaintiff Cash alleges that she won the appeal of her Title IX hearing, but a new hearing has not yet been scheduled.  Defs.' Mem. Supp. (# 4) at 16; see Compl. (# 1) ¶ 63.   No breach can occur "until all relevant procedures have been completed."  Samost v. Duke Univ., 742 S.E.2d 257, 521 (N.C. Ct. App. 2013) (affirming the dismissal of the student's breach of contract claim because the Defendant had not made a disciplinary decision which had been upheld through all stages of the review procedure). For all these reasons, Count Three fails to state a claim.

**2. Plaintiff Cash fails to plausibly plead negligence and gross negligence.**

Defendants next argue that Plaintiff Cash has failed to plausibly plead negligence and gross negligence.[12] Defs.' Mem. Supp. (# 4) at 16-20. Pursuant to North Carolina law, a plaintiff must allege facts to support the following elements to state a claim for negligence: (1) legal duty, (2) breach of duty, (3) actual and proximate causation, (4) and injury. Petty v Cranston Print Works Co., 90 S.E.2d 717, 721 (N.C. 1956); Cole v. Wells Fargo Bank, N.A., No. 1:15-CV-39-MR, 2016 WL 737943, at *6 (W.D.N.C. Feb. 23, 2016). In North Carolina, gross negligence is defined as willful or wanton conduct "done with conscious or reckless disregard for the rights and safety of others." F.D.I.C. ex. rel. Co-op. Bank v. Rippy, 799 F.3d 301, 314 (4th Cir. 2015) (citing Yancey v. Lea, 550 S.E.2d 155, 157 (N.C. 2001)).

In the instant case, Plaintiff Cash alleges, in pertinent part, that Defendants owed her "duties to keep her safe, to handle her claims properly and to recognize, respect and care for her psychological condition and special psychological needs." Compl. (# 1) ¶ 113.

"Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such a duty may be imposed by law." Davidson v. Univ. of N.C. Chapel Hill, 543 S.E.2d 920, 926 (N.C. Ct.

---

[12] Ordinary negligence and gross negligence are substantially different. McDevitt v. Stacy, 559 S.E.2d 201, 211 (N.C. Ct. App. 2002). In particular,

> [a]n act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others, i.e., a conscious disregard of the [rights and] safety of others. An act or conduct moves beyond the realm of negligence when the injury or damage itself is intentional.

Yancey v. Lea, 550 S.E.2d 155, 158 (N.C. 2001) (emphases in original) (citing Brewer v. Harris, 182 S.E.2d 345, 350 (N.C. 1971)).

App. 2001) (quoting <u>Pinnix v. Toomey</u>, 87 S.E.2d 893, 897 (N.C. 1955)). "[T]he student-university relationship, standing alone, does not constitute a special relationship giving rise to a duty of care."[13] <u>Id.</u> at 928 (finding a duty of care to a cheerleader during practice); <u>see also</u> <u>Kleinknecht v. Gettysburg College</u>, 989 F.2d 1360, 1370 (3rd Cir. 1993) (finding a duty of care to a lacrosse player during practice).

In the instant case, Defendant College had no special duty of care with respect to Plaintiff Cash. <u>See</u> <u>Davidson</u>, 543 S.E.2d at 928. Consequently, Defendant College's duty was to act as a reasonable and prudent person under the same or similar circumstances. <u>See</u> <u>Stewart v. Allison</u>, 356 S.E.2d 109, 110 (N.C. Ct. App. 1987) ("The law imposes on every person in an active course of conduct the positive duty to use ordinary care to protect others from harm[.]"). Plaintiff Cash's allegation that Defendants owed her a special duty of care must fail as a matter of law.

The remainder of Plaintiff Cash's negligence allegations (<u>see</u> Compl. (# 1) ¶¶ 114-117), are conclusory. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Because Plaintiff Cash has failed to do more than list the elements of her negligence and gross negligence claims, she has failed to plausibly state a claim.

---

[13] The Court noted that its holding was "based on the fact that plaintiff was injured while practicing as part of a school-sponsored, intercollegiate team. Our holding <u>should</u> <u>not</u> be interpreted as finding a special relationship to exist between a university, college, or other secondary education institution, and every student attending the school, or even every member of a student group, club, intramural team, or organization." <u>Davidson</u>, 543 S.E.2d at 928 (emphasis added).

In addition, to the extent Plaintiff Cash is attempting to allege that she was injured by the conduct of those sitting in the hallway outside her Title IX hearing, even if those actions amounted to negligence or gross negligence, Defendant College would not be liable. See Hall v. Toreros, II, Inc., 626 S.E.2d 861, 871 (N.C. Ct. App. 2006) ("In general, there is no duty to prevent harm to another by the conduct of a third person.").[14]

To the extent that Plaintiff Cash alleges that Title IX supplies a duty actionable in negligence, she cannot plead such a claim. See Doe v. University of South, No. 4:09-CV-62, 2011 WL 1258104, at *14 (E.D. Tenn. Mar. 31, 2011) ("If the Court were to allow a regulation used in administering a federally-created right to create a state negligence per se claim, it would effectively eviscerate the Gebser rule.")[15]; see also Jones v. Pi Kappa Alpha Int'l Fraternity, Inc., No. 2:16-CV-7720-KM-MAH, 2017 WL 4074547, at *11 (D.N.J. Sept. 13, 2017) (concluding that a negligence per se claim cannot be based on Title IX because a negligence per se claim would be an end-run around the requirements of Title IX).

If Plaintiff Cash is attempting to allege negligence claims against Defendant College's employee school officials, Plaintiffs' negligence claims should be dismissed because these school officials do not owe a special duty of care to students. See McFayden v. Duke Univ., 786 F. Supp. 2d 887 (M.D.N.C. 2011), aff'd in part, rev'd in part, dismissed

---

[14] There are exceptions to this general rule, which typically arise when the defendant has a special relationship to the plaintiff or the tortfeasor. Hall, 626 S.E.2d at 871. As noted above, there is no special relationship between Defendant College and Plaintiff Cash.

[15] Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998), held that there was no private right of action of Title IX's administrative requirements. Id. at 292.

in part sub nom. Evans v. Chalmers, 703 F.3d 636 (4th Cir. 2012) ("[T]he university-student relationship alone does not impose an actionable duty of care on administrators or advisors in the discharge of their academic functions."); see also Ross v. Univ. of Tulsa, 180 F. Supp. 3d 951, 965 (N.D. Okla. 2016) ("[W]hile a private right of action exists under Title IX, it requires more than negligence against school officials.").

Finally, Plaintiffs' Complaint, which alleges intentional conduct by Defendants, generally cannot support a negligence claim. "Negligence . . . does not include intentional acts[.]" Jenkins v. Dept. of Motor Vehicles, 94 S.E.2d 577, 580 (N.C. 1956).

Plaintiffs allege that Defendants were "willful, wanton and in a conscious and intentional disregard of and indifferences to the rights and safety of [ ] Plaintiff [Cash] and which these defendants, and each of them, knew or should have known was reasonably likely to result in injury, damage, or other harm to [ ] Plaintiff [Cash]." Compl. (# 1) ¶ 115. To the extent that Plaintiffs' Complaint includes allegations of intentional conduct, such allegations generally cannot support a negligence claim.

For these reasons, Plaintiffs' negligence and gross negligence claim, Count Four, should be dismissed.

### 3. Plaintiffs' negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED") claims fail.

Next, Defendants argue that "it appears" Plaintiffs' NIED and IIED claims, Count Five, are brought by Plaintiff Bayne. Defs.' Mem. Supp. (# 4) at 20. Defendants assert that they will limit their discussion to Plaintiff Bayne's NIED and IIED claims. Id.

The Court is not persuaded that this is correct approach. Count Five refers to "Plaintiffs" on several occasions. See Compl. (# 1) ¶¶ 119-120, 122, 124, 126. Therefore, the Court will address the NIED and IIED claims as they relate to both Plaintiffs.

To state a claim for IIED in North Carolina, a plaintiff must allege each of the following: (a) extreme and outrageous conduct, (b) intended to cause severe emotional distress, (c) that did indeed cause severe emotional distress. Mosk v. Gaston Cty., No. 3:17-CV-00177RJC-DSC, 2018 WL 1566339, at *8 (W.D.N.C. Mar. 30, 2018) (citing Holloway v. Wachovia Bank & Trust Co., 452 S.E.2d 233, 240 (N.C. 1994)).

To state a claim for NIED in North Carolina, a plaintiff must allege: (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) the conduct did in fact cause the plaintiff severe emotional distress. Tutah v. Camden Dev., Inc., No. 3:17-CV-6463, 2018 WL 2434071, at *4 (W.D.N.C. May 30, 2018); Johnson v. Ruark Obstetrics, 395 S.E.2d 85, 97 (N.C. 1990).

To plead either IIED or NIED, a plaintiff must allege "severe emotional distress." See Johnson, 395 S.E.2d at 97 (recognizing that with a NIED claim, "severe emotional distress" refers to any emotional or mental disorder, such as neurosis, psychosis, chronic depression, phobia, or any other type of disabling emotional or mental condition that may be diagnosed by a professional).[16]

### a. Plaintiff Bayne's IIED and NIED claims

---

[16] The definition of "severe emotional distress," as set forth in Johnson, applies to an IIED claim as well as a NIED claim.

Defendants argue that there is no allegation that Plaintiff Bayne was subjected to "severe emotional distress."  Defs.' Mem. Supp. (# 4) at 21.  Defendants further argue that Plaintiff Bayne may not maintain an action for either IIED or NIED based on an injury to Plaintiff Cash. Id. at 21-22.  Defendants conclude that Plaintiff Bayne's IIED and NIED claims fail as a matter of law.  Id. at 22.

The Court agrees that the Complaint fails to include any allegations that Plaintiff Bayne was subjected to "severe emotional distress."  Consequently, Plaintiff Bayne's IIED and NIED claims should be dismissed.

### b.  Plaintiff Cash's IIED claim

Defendants next argue that Plaintiff Cash has failed to plausibly allege "extreme and outrageous" conduct.  Id. at 22-23.  Defendants specifically contend that no part of Defendant College's conduct or the individual Defendants' conduct rises to the level of being "extreme and outrageous." Id. at 22.

"Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Guthrie v. Conroy, 567 S.E.2d 403, 408-09 (N.C. Ct. App. 2002) (quoting Briggs v. Rosenthal, 327 S.E.2d 308, 311 (N.C. Ct. App. 1985)).  A determination regarding whether conduct constitutes the type of extreme and outrageous conduct that could give rise to an IIED claim is a question of law. Johnson v. Colonial Life & Accident Ins. Co., 618 S.E.2d 867, 872-73 (N.C. Ct. App. 2005).

32

North Carolina courts have determined the level required by law to qualify as a "outrageous" conduct. The conduct must be "atrocious, and utterly intolerable in a civilized community." <u>Guthrie</u>, 567 S.E.2d at 408-09. This differs from "behavior universally regarded as inappropriate and abhorrent." <u>Ortiz v. Big Bear Events, LLC</u>, No. 3:12-CV-341-RJC-DCK, 2013 WL 247444, at *4 (W.D.N.C Jan. 23, 2013).

In the instant case, Plaintiffs allege, at most, that MR followed Plaintiff Cash on several occasions and Defendant College did not perform a sufficient investigation or conduct a suitable Title IX hearing. <u>See</u> Compl. (# 1). Plaintiffs have failed to allege that Plaintiff Cash was subjected to conduct from any Defendant that rises to the level of being "extreme and outrageous." <u>See</u> <u>Johnson v. Bollinger</u>, 356 S.E.2d 378, 381-82 (N.C. Ct. App. 1987) (IIED claim properly dismissed where the defendant approached the plaintiff in an angry and threatening manner while carrying a pistol, shook his hand in the plaintiff's face, and said in a loud voice, "I will get you.").

Defendants also argue that Plaintiffs have failed to allege that they intended to cause Plaintiff Cash severe emotional distress. Defs.' Mem. Supp. (# 4) at 23. In pertinent part, Plaintiffs allege:

> It was reasonably foreseeable to the Defendants and/or each of them that their conduct, actions, and/or omissions that constituted a breach of the duty or duties it and/or they had to the Plaintiffs would cause Plaintiff Shelby Cash severe emotional distress and/or damage.

Compl. (# 1) ¶ 123.

Defendants are incorrect. Plaintiffs' allegations are sufficient to suggest that Defendants intended to cause her severe emotional distress. <u>See</u> <u>Miller v. Brooks</u>,

472 S.E.2d 350, 356 (N.C. Ct. App. 1996) (recognizing that the element of intent "may also be proven by a showing that the defendant acted with reckless indifference to the likelihood that his or her acts will cause severe emotional distress.") (internal quotation marks omitted). This outcome is of no consequence here because the Court has already determined that Plaintiff Cash's IIED claim should be dismissed on another basis.

In light of the foregoing, Plaintiff Cash's IIED claim should be dismissed.

### c. Plaintiff Cash's NIED claim

Relying on Horne v. Cumberland Cty. Hosp. Sys., Inc., 746 S.E.2d 13 (N.C. Ct. App. 2013), Defendants next argue that Plaintiff Cash's NIED claim fails because she has not identified any relevant legal duty or how it was breached. Defs.' Mem. Supp. (# 4) at 23-24. Defendants further argue that Plaintiff Cash fails to identify what actions by which Defendants "were intentional, negligent and/or grossly negligent" (Compl. (# 1) ¶ 119) and specifically show these "acts and/or omissions . . . arose out of a duty or duties that the Defendants, and each of them, individually or collectively, had to [Plaintiff Cash]." (Id. ¶ 121). Defs.' Mem. Supp. (# 4) at 23.

In Horne, the North Carolina Court of Appeals affirmed the trial court's dismissal of a complaint alleging NIED, where the Plaintiff failed to allege any duty owed by the Defendant. 746 S.E.2d at 19. The Court held that the failure to allege such a duty owed by the Defendant to the Plaintiff is fatal to a NIED claim on a motion to dismiss. Id. The Court also found that the Plaintiff's allegations of intentional conduct, as opposed to negligent conduct, were also fatal to the Plaintiff's NIED claim. Id. Finally, the Court

34

concluded that the Plaintiff erred by summarily alleging that the Defendant caused severe emotional distress. Id. at 19-20.

In the instant case, Plaintiff rather summarily alleges the elements of a NIED claim. See Compl. (# 1). This is not sufficient to survive a Rule 12(b)(6) motion to dismiss. See Iqbal, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and citation omitted); see also Holleman v. Aiken, 668 S.E.2d 579, 591 (N.C. Ct. App. 2008) (affirming trial court's dismissal of the plaintiff's NIED claims where the complaint failed to "make any specific factual allegations as to [the Plaintiff's] 'severe emotional distress'"). Accordingly, Plaintiff Cash's NIED claim should be dismissed.

### d. Alternatively, Plaintiff Cash's claims against Defendant Taylor fail.

Finally, Defendants argue that, in the alternative, Plaintiff Cash's claims against Defendant Taylor must fail. Defs.' Mem. Supp. (# 4) at 24-25. Defendants contend that there is only one factual allegation in the Complaint related to Defendant Taylor, see Compl. (# 1) ¶ 59. Defs.' Mem. Supp. (# 4) at 24. Defendants contend that even if the allegation is true, it is not a threat or an insult to either Plaintiff, and at most, is an offensive joke. Id. Defendants conclude that the offensive joke fails as a matter of law because it does not rise to the level of being a NIED or an IIED claim. Id.

In this case, in pertinent part, Plaintiffs allege:

Defendant Taylor, during a break, made patently offensive, sexual and inappropriate statements loud enough for [Plaintiff Cash] and [Plaintiff

35

Bayne] to hear that "all I need for a good weekend is liquor and loose women" and discussing candle scents known as "sweaty balls" with another panel member.

Compl. (# 1) ¶ 59.

Plaintiffs' allegations, viewed in a light most favorable to them, do not give rise to an IIED or NIED claim for at least two reasons. First, the behavior alleged is not "extreme and outrageous." See Guthrie, 567 S.E.2d at 410 (IIED properly dismissed where the Defendant's alleged behavior was annoyingly juvenile, obnoxious, and offensive). Two, Plaintiffs fail to allege that Defendant Taylor's comments caused them to undergo "severe emotional distress."

Plaintiffs' allegations against Defendant Taylor also fail to state a negligence claim. As addressed above, Plaintiff Cash has failed to show that she was owed a special duty. Therefore, Plaintiffs have failed to sufficiently allege a claim of negligence, IIED, or NIED against Defendant Taylor.

## V. Conclusion

Considering the foregoing, the Court RECOMMENDS that Defendants' Motion to Dismiss (# 3) be GRANTED, and this case be dismissed with prejudice.

Signed: August 13, 2018

Dennis L. Howell
United States Magistrate Judge

**Time for Objections**

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).