IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
FILE: 1:18CV52


**SHELBY LYNN CASH**, and
**BETTY JOE CASH BAYNE**,

      Plaintiffs,

VS.

1)    **LEES-MCRAE COLLEGE, INCORPORATED**;
2)    **JON DRIGGERS**, Dean of Students, Lees-McRae
        College, Incorporated, in his Official and
        Individual Capacities;
3)    **JEFFREY MERRILL**, Title IX Coordinator & Director
        of Compliance, Lees-McRae College,
        Incorporated, in his Official and Individual
        Capacities; and
4)    **JOSH GAISSER**, Assistant Dean of Students for
        Residence Life, Lees-McRae College,
        Incorporated, in his Official and Individual
        Capacities,

      Defendants.


## PLAINTIFFS' OBJECTIONS TO THE MEMORANDUM
## AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

SUTTON & LINDSAY, PLLC
Stephen P. Lindsay
46 Haywood Street
Suite 200
Asheville, NC 28801
828-551-6446
spl@suttonlindsay.com
NC Bar: 13017

**Table of Contents**

Table of Authorities

Introduction/ Factual Background

Standard of Review

Discussion

I.  Plaintiffs have alleged ample facts to state a claim for sexual harassment and hostile environment arising under Title IX.

   A.  The facts as alleged in the complaint would establish a hostile and abusive environment created by unredressed sexual harassment of Plaintiff Cash by other students at the Defendant College.

      Frequency and severity

      Whether the conduct involved physical threats or humiliation

      Whether the conduct interfered with Plaintiff's performance

      Psychological harm

   B.  The Complaint also alleges facts sufficient to establish the Defendants' liability under Title IX for deliberate indifference and disregard of Plaintiff's rights to an education free of discrimination and harassment.

II.  Plaintiffs have also alleged facts that would establish state law causes of action.

   A.  Breach of contract

   B.  Negligence

   C.  Negligent infliction of emotional distress

Conclusion

# Table of Authorities

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009)...................................................................................... 6

*Bell Atl. Corp. V. Twombly,*
    550 U.S. 544, 557 (6th Cir. 2007).......................................................................... 6

*Brooks v. City of Winston-Salem,*
    85 F.3d 178 (4th Cir. 1996).................................................................................... 5

*Cannon v. Univ. of Chicago,*
    441 U.S. 677 (1979)............................................................................................... 8

*Conley v. Gibson,*
    355 U.S. 41 (1957)................................................................................................. 6

*Davis v. Monroe Cty. Bd. Of Educ.,*
    526 U.S. 629 (1999)............................................................................................... 8

*DeSole v. United States,*
    947 F.2d 1169 (4th Cir. 1991)................................................................................ 5

*Doe V. Baum, et al.,*
    No. 17-2213 (6th Cir. 1991)................................................................................... 6

*Doe v. School Admin.,*
    66 F. Supp. 2d 57 (D. Me. 1999).......................................................................... 13

*EEOC v. Fairbrook Med. Clinic,*
    609 F.3d 320 (4th Cir. 2010) ............................................................................... 11

*EEOC v. Sunbelt Rentals,*
    521 F.3d 306 (4th Cir. 2008)................................................................................ 11

*Fairbrook Med. Clinic,*
    609 F.3d 328.......................................................................................................... 12

iii

*Faragher v. City of Boca Raton,*
    524 U.S. 775 (1988).................................................................................. 11

*Fennell v. Marion Indep. Sch. Dist.,*
    963 F. Supp. 2d 623 (W.D. Tex. 2013)................................................... 13

*Freeman v. Dal-Tile Corp.,*
    930 F. Supp. 2d 611 (E.D.N.C. 2013)..................................................... 12

*Gebster v. Lago Vista Indep. Sch. Dist.,*
    524 U.S. 274 (1988).................................................................................... 8

*Harris v. Forklift Systems, Inc.,*
    510 U.S. 17 (1993).................................................................................... 11

*Jacobs v. N.C. Administrative Office of the Courts,*
    780 F.3d 562 (4th Cir. 2015)...................................................................... 9

*Jenkins v. McKeithen,*
    395 U.S. 411 (1969).................................................................................... 6

*Jennings v. Univ. of N.C.,*
    482 F.3d 686 (4th Cir. 2007)(en banc).................................................. 10

*Johnson v. Ruark Obstetrics,*
    395 S.E.2d 85, 97 (N.C. 1990)............................................................... 27

*Krebs v. New Kensignton-Arnold Sch. Dist.,*
    2016 WL 6820402 (W.D. Pa. 2016)...................................................... 13

*Media Network, Inc., v. Long Haymes Carr, Inc.,*
    197 N.C.App. 433, 678 S.E.2d 671 (2009)........................................... 25

*Murrell v. Sch. Dist. No. 1, Denver, Colo.,*
    186 F.3d 1238 (10th Cir. 1999) ............................................................. 10

*Oncale v. Sundowner Offshore Services,*
    523 U.S. 75 (1998)................................................................................... 11

iv

*Petty v. Cranston Print Works,*
    90 S.E.2d 717 (N.C. 1956)...................................................................... 26

*Price ex rel. O.P. v. Scranton Sch. Dist.,*
    2012 WL 37090 (M.D. Pa. 2012) .......................................................... 13

*Randall v. United States,*
    30 F.3d 518 (4th Cir. 1994)..................................................................... 5

*Rouse v. Duke Univ.,*
    869 F. Supp. 2d. 674 (M.D.N.C. 2012)................................................. 10

*Rowan County Bd. of Educ. v. U.S. Gypsum Co.,*
    332 N.C. 1, 418 S.E.2d 648 (1992)........................................................ 25

*Southfield Ltd. P'ship v. Flagstar Bank,*
    727 F.3d 502, 505 (6th Cir. 2013)............................................................ 7

*Theno v. Tonganoxie Unified Sch. Dist.,*
    377 F. Supp. 2d 952 (D. Kansas 2005) .................................................. 13

*Vance v. Spencer City Public Sch. Dist.,*
    231 F.3d 253 (6th Cir. 2000).................................................................. 13

*Watson Carpet v. Mohawk Industries, Inc.,*
    648 F.33 452, 458 (6th Cir. 2011).......................................................... 7

**Statutes**

United States Code

    20 U.S.C. § 1681 et seq.  ........................................... *passim*

    20 U.S.C. § 1681(a)

    28 U.S.C. § 636

    42 U.S.C. § 12101 et seq.  ........................................... *passim*

v

**Rules**

Federal Rules of Civil Procedure

    Rule 8

    Rule 12(b)(6)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
FILE: 1:18CV52

**SHELBY LYNN CASH**, and
**BETTY JOE CASH BAYNE**,

      Plaintiffs,

VS.

1)     **LEES-MCRAE COLLEGE, INCORPORATED**;
2)     **JON DRIGGERS**, Dean of Students, Lees-McRae
           College, Incorporated, in his Official and
           Individual Capacities;
3)     **JEFFREY MERRILL**, Title IX Coordinator & Director
           of Compliance, Lees-McRae College,
           Incorporated, in his Official and Individual
           Capacities; and
4)     **JOSH GAISSER**, Assistant Dean of Students for
           Residence Life, Lees-McRae College,
           Incorporated, in his Official and Individual
           Capacities,

      Defendants.

## PLAINTIFFS' OBJECTIONS TO THE MEMORANDUM
## AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiffs respectfully object to the Memorandum

and Report of the Magistrate Judge dated August 13, 2018, and ask that the Defendant's

motion to dismiss be denied. Prior to filing these objections, the Plaintiffs have filed a

Motion to Amend their Complaint and an Amended Complaint. This pleading does not

waive these things and is being made subject thereto..

**Introduction/Factual Background**

Plaintiffs Shelby Cash and her mother, Betty Joe Bayne, have brought this civil action against Defendant Lees-McRae College and three of its administrative officials, asserting liability under Title IX and the Americans with Disabilities Act, and associated tort claims arising from North Carolina law.

This is a very serious case in which a young woman with social anxiety disorder desired to get a college education. Shelby Cash accepted an offer to attend and enrolled at the Defendant Lees-McRae College. Subsequently she was sexually harassed, stalked, and intimidated by a popular, promising student athlete, ("MR"), who was attending the College on a basketball scholarship. Mishandled by Lees-McRae from start to finish, these events culminated in the student Plaintiff experiencing a severe emotional breakdown, withdrawing from school, and attempting suicide.

Plaintiff Shelby Cash, who suffered from diagnosed social anxiety, chose Lees-McRea based on its assurances that it was a safe, accommodating, student-centered campus. She enrolled at Lees-McRae College in her junior year, after a careful search for a college environment that would be safe and supportive in light of her emotional challenges. Lees-McRae personnel were not only made aware of her special requirements, but assured her the College was just such an environment. They agreed to accommodate her needs with an on-campus therapist, and special living arrangements. Ms. Cash also assumed a work-study position assisting Defendant Jon Driggers, Dean of Students, who was particularly aware of

Ms. Cash's struggles with social anxiety, because she would sometimes be excused from work for a therapy appointment. (Amended Complaint at ¶¶ 31-34.)

Contrary to their assurances, in reality, the College had a history of denying and concealing cases of sexual harassment, in abdication of its duties under Title IX. (See Amended Complaint at ¶¶ 91-93.) Consistent with that history, Lees-McRea's personnel responded inadequately and inappropriately when Ms. Cash reported a late-night verbal assault and sexual harassment by another student, which terrified her, and his subsequently stalking and intimidating her repeatedly in violation of two restraining orders. (¶¶ 37-50.)

Ms. Cash had been thriving in her junior year, maintaining good grades while working, making new friends, and managing her social anxiety. Then on April 11, 2017, she was leaving a campus activity and walking to another building in search of an available restroom, when she was accosted by "MR," attending Lees-McRae on a basketball scholarship, and one or more other male students. "MR" followed her and launched into a series of vile sexual taunts. Ms. Cash fled and locked herself inside the restroom, where she remained for 15-20 minutes until she could reach her boyfriend by cellphone. When he arrived to escort her home, MR" and the other male student(s) continued the verbal sexual harassment and threatening behavior. (¶¶ 37-40.)

Ms. Cash immediately reported the incident, which Defendant Gaisser sought to downplay as "miscommunication." (¶¶ 41-43.) A few days later, Ms. Cash filed a formal Title IX complaint, and the College imposed a no-contact order. However, Lees-McRea did

nothing to enforce that order, allowing "MR" free rein as he repeatedly followed and intimidated Ms. Cash on their campus.(¶¶ 44-47.) She began to cloister herself in her dorm room, in an emotional tailspin. At her mother's urging, she obtained a judicial protective order, because the College was not enforcing its own no-contact order. "MR" continued to follow and terrorize her, ignoring both restraining orders, and the Defendants did nothing to stop him. (¶¶ 48-50.)

The disciplinary hearing Lees-McRae personnel then conducted was a farce (as they implicitly admitted when they granted her a new hearing). Defendant Driggers convened a hearing panel stacked with "MR's" friends and supporters, and who predictably refused to hold him accountable. In addition, the Defendants allowed the hearing to be dominated by a hostile mob of "MR's" supporters, including his mother, who was allowed to verbally assault Ms. Cash and her mother, Plaintiff Betty Joe Bayne during the hearing and in violation of hearing conduct rules. (¶¶ 51-59.)

The cumulative trauma of these events left Ms. Cash, who had previously been thriving, unable to function, hiding under her bed in her dorm room, humiliated and unable to attend classes. She withdrew from the College, in an emotional tailspin. Her mother subsequently found her unresponsive, having attempted suicide – Ms. Bayne's fortuitous arrival at their home likely averted the distraught Ms. Cash's tragic death. (¶¶ 60-63.)

For the sake of economy, Plaintiffs have highlighted and summarized the background facts that are spelled out in greater detail in the Complaint and the Amended Complaint

pending before the Court. The Magistrate's Memorandum, filed on August 13, 2018, details the alleged facts almost verbatim from the Complaint, or very closely paraphrased. Having for the most part accurately presented the facts as Plaintiffs have alleged them, however, the Magistrate goes on to minimize or ignore key facts and to draw conclusions that are contrary to the law.

### Standard of Review

The Magistrate's ruling is a "recommendation" which is a final disposition that triggers the provisions of Rule 72 of the Federal Rules of Civil Procedure. That Rule requires a de novo review of the magistrate's recommendation in this case. Undersigned, by objecting to the Magistrate's recommendation as more specifically set forth herein, hereby requests that this Court conduct a de novo review, deny the Defendants' Motion s to dismiss and, contrary to the Magistrate's recommendation, allow this matter to move forward with discovery.

On a motion to dismiss, the plaintiff's facts as alleged must be taken as true and viewed in the light most favorable to sustaining the cause of action. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *DeSole v. United*

*States*, 947 F.2d 1169, 1177 (4th Cir. 1991); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A plaintiff shows that she is entitled to relief by "plausibly suggesting" that she can meet the elements of her claims. *Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 557, (2007). (cited as authority by the Sixth Circuit in. A plaintiff's "suggestion" is "plausible" "when it contains enough factual content that the court can reasonably infer that the defendants are liable." *Doe v. Baum, et al.*, No. 17-2213, *6th Circuit, decided* September 7, 2018 at page 5) *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss, "the material allegations of the complaint are taken as admitted, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* A motion to dismiss also must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.Proc. 8.

> When evaluating a complaint's sufficiency, courts use a three-step process. First, the court must accept all of the plaintiff's factual allegations as true. ... Second, the court must draw all reasonable inferences I the plaintiff's favor. ... And third, the court must take all of these facts and inferences and determine whether they plausibly give rise to an entitlement to relief. ... If it is at all plausible (beyond a wing and a prayer) that the plaintff would succeed if he proved everything in his complaint, the case proceeds.

(*Baum*, *supra* at 5, *citing to Iqbal*, 556 U.S. at 679, other citations omitted).

Alternate explanations of what plausibly might have occurred are not fatal to a plaintiff's ability to survive a Rule 12(b)(6) motion to dismiss. *See, e.g. Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502, 505 (6ᵗʰ Cir. 2013)("[T]he mere existence of more likely alternative explanations does not automatically entitle a defendant to dismissal."); In fact, there are often more than one - even several - explanations for a defendant's conduct some of which resulting in there being no liability. However, "[f]erreting out the most likely reason for the defendants' actions is not appropriate at the pleading s stage." *Watson Carpet v. Mohawk Industries, Inc.,* 648 F.3d 452, 458 (6ᵗʰ Cir. 2011). A plaintiff's allegations do not have to give rise to the most plausible explanation – they just have to give rise to one of them. *See Iqbal*, 556 U.S. at 678 (stating that there is no "probability requirement" at the pleading stage (*quoting Twombly*, 550 U.S. at 556)).

## Discussion

This case arises centrally under Title IX of the Education Amendments of 1972 ("Title IX"), and under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. The Plaintiffs also allege several causes of action based on North Carolina common law, and premised in large part on the Defendants' breach of duties created by these federal statutes. This case also claims a breach of contract between the Defendant College and the Plaintiffs

for makings specific representations that induced the Plaintiffs to select the Defendant College to attend and then breaching those representations to the damage and detriment of the Plaintiffs.

Title IX, in 20 U.S.C. § 1681(a), provides in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." The Americans with Disabilities Act requires accommodation of, and prohibits discrimination against, individuals with disabilities, specifically including social anxiety disorders, as the Fourth Circuit has recognized.

Title IX unquestionably confers a private right of action. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709 (1979). An educational institution receiving federal funds violates Title IX, and is subject to a private damages action, where it demonstrates "deliberate indifference" to known acts of harassment, s*ee Gebster v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1988), including cases where the harasser is a student, *Davis v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629 (1999).

In *Davis,* 526 U.S. at 1669–76, the Supreme Court held that a complainant may prevail in a private Title IX damages action against a school in cases of student-on-student harassment where the funding recipient is  a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and  b) the harassment is so severe, pervasive,

and objectively offensive that it can be said to deprive the victim of access to the educational opportunities or benefits provided by the school.

In addition to its responsibilities under Title IX, the College had a duty of care stemming from its awareness of Ms. Cash's diagnosed social anxiety limitations, pursuant to 42 U.S.C. § 12101 et seq., the Americans with Disabilities Act. *See, e.g., Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 570-575 (4th Cir. 2015) (employer not entitled to summary judgment where plaintiff alleged she was terminated because of her social anxiety disorder).

The institution's failure, as alleged here, to respond adequately and appropriately to sexual harassment creating a hostile environment, creates liability under Title IX's guarantee that students like Ms. Cash must be able to pursue an education, free from discrimination. That failure also breaches the College's duty to accommodate Ms. Cash's limitations due to her social anxiety condition, which was well known to College personnel, including individual Defendants. The consequences of that failure have been catastrophic for Ms. Cash, and have stopped just short of causing her tragic demise.

I. **Plaintiffs have alleged ample facts to state a claim for sexual harassment and hostile environment arising under Title IX.**

To establish a Title IX claim based on sexual harassment, the Plaintiff must show that 1) she was a student at an educational institution receiving federal funds, 2) she was

subjected to harassment based on her sex, 3) the harassment was sufficiently severe *or* pervasive to create a hostile or abusive environment in an educational program or activity, and 4) there is a basis for imputing liability to the institution (i.e., its deliberate indifference). *Jennings v. Univ. of N.C.*, 482 F.3d 686, 696 (4th Cir. 2007)(en banc); *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1248 (10th Cir. 1999); *Rouse v. Duke Univ.*, 869 F. Supp. 2d. 674 (M.D.N.C. 2012).

The Plaintiffs in this case have more than adequately alleged detailed facts that would establish each of these elements. The first two elements are satisfied beyond any dispute on the facts alleged: Plaintiff Shelby Cash was enrolled at Defendant Lees-McRae College, an institution of higher learning which receives federal funding. (Complaint at ¶¶ 11, 30, 34). Equally obvious, the alleged facts would establish that Ms. Cash was harassed based on her sex by MR and other students. (Complaint at ¶ ¶ , , , 87)

The more complex factual questions regarding the severity of the harassment and the Defendants' dereliction of their duties under Title IX are also more than adequately addressed by the alleged facts, as analyzed in more detail below.

A. **The facts as alleged in the complaint would establish a hostile and abusive environment created by unredressed sexual harassment of Plaintiff Cash by other students at the Defendant College.**

As the courts have made clear in the hostile environment caselaw, there can be no "mathematically precise test" for determining whether a work or school environment is

hostile or abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993). Rather, the "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Services*, 523 U.S.75, 81 (1998), quoting *Harris,* 510 U.S. at 23. Harassment is shown to be sufficiently severe or pervasive when it has created "an environment that a reasonable person would find hostile or abusive," and that those affected "subjectively perceive . . . to be abusive." *Harris,* 510 U.S. at 21. Thus, reasonableness is for a jury to determine rather than for a magistrate or judge to determine on the face of a complaint and without there having been any discovery conducted.

The courts have articulated several relevant factors informing the hostile environment inquiry: 1) the frequency of the discriminatory conduct; 2) its severity; 3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; 4) whether the conduct unreasonably interfered with the plaintiff's performance; and 5) what psychological harm, if any, resulted from the harassment. See *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1988); *Harris*, 510 U.S. at 23; *EEOC v. Fairbrook Med. Clinic*, 609 F.3d 320, 328 (4th Cir. 2010); *EEOC v. Sunbelt Rentals*, 521 F.3d 306, 315 (4th Cir. 2008). No one factor is determinative; the court must consider the totality of the circumstances. This inquiry also requires "careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81. "Conduct which is considered normal and appropriate in one setting may be deemed abusive

or hostile in another." *Fairbrook Med. Clinic*, 609 F.3d at 328; *see also Freeman v. Dal-Tile Corp.*, 930 F. Supp. 2d 611 (E.D.N.C. 2013).

In the present case, the harassment Ms. Cash experienced from "MR" and unnamed others would not be considered "normal and appropriate" in any imaginable setting. The resulting hostile environment was multi-faceted, involving the initial offensive encounter with "MR" and others, which clearly terrified her, followed by repeated incidents of her assailant stalking and intimidating her, in violation of a no-contact order. The hostile environment arising from this conduct was exacerbated by the Defendant's mishandling of the situation, when they failed to enforce the no-contact order (e.g., by ejecting "MR" from campus, as should have been done), and conducted the hearing in such a manner that it was effectively a kangaroo court dominated by a mob hostile to Ms. Cash.

### Frequency and severity

The first two factors the hostile environment caselaw has denoted, the frequency and severity of the harassing conduct, are best considered in tandem, as there is a certain balancing of these elements. The more frequent and pervasive the conduct is, the less severe it need be, and vice versa.

As to frequency of the harassing conduct, the courts have been clear in hostile environment cases that the plaintiff need not endure harassment for a protracted period. Numerous cases have found a hostile environment may exist in a time frame shorter that the

weeks of abuse to which Ms. Cash was subjected. *See, e.g., Vance v. Spencer City Public Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000): "Within the context of Title IX, a student's claim of hostile environment can arise from a single incident." *See also Doe v. School Admin.*, 66 F. Supp. 2d 57, 62 (D. Me. 1999). As the Supreme Court noted in *Harris*, 510 U.S. at 22, the civil rights statutes' protection against a hostile environment "comes into play before the harassing conduct leads to a nervous breakdown."

In terms of severity, the hostile environment case law also makes clear that verbal harassment alone can constitute severe or pervasive harassment. For example, in *Jennings v. Univ. of N.C.*, 482 F.3d at 697-698, the Fourth Circuit held that the plaintiff's factual allegations regarding primarily verbal harassment would be sufficient to sustain a finding of "severe or pervasive" conduct. The federal courts have widely adopted this rule: *see e.g., Krebs v. New Kensignton-Arnold Sch. Dist.*, 2016 WL 6820402 (W.D. Pa. 2016) ("constant and pervasive harassment with sex based terms . . . rose to the level required by Title IX"); *Price ex rel. O.P. v. Scranton Sch. Dist.*, 2012 WL 37090 (M.D. Pa. 2012) ("gender-based slurs"); *Fennell v. Marion Indep. Sch. Dist.*, 963 F. Supp. 2d 623, 646 (W.D. Tex. 2013) (repeated use of "offensive and derogatory epithets"); *Theno v. Tonganoxie Unified Sch. Dist.*, 377 F. Supp. 2d 952, 968 (D. Kansas 2005) (alleged harassment involving "only name-calling and crude gestures, not physical harassment," was actionable).

The initial sexual taunts from "MR" et al., accompanied by physical intimidation, were terrifying enough, especially for an individual of Ms. Cash's fragile emotional

Case 1:18-cv-00052-MR-DLH   Document 19   Filed 09/10/18   Page 19 of 35

condition. But the harassment continued, as the first incident was followed by weeks of stalking, with Lees-McRae doing nothing to enforce the no-contact order, even as Ms. Cash immediately reported the behavior and its severe effects on her. With no meaningful help from the Defendant's, Ms. Cash was relegated to seeking help from the judicial system which does not, in any way, abrogate the duties of the Defendants to protect and safeguard the Plaintiff herein.

The Defendants allowed the "disciplinary hearing" itself to degenerate into yet another hostile environment. Ms. Cash and her mother were subjected to badgering by MR's mother, and to a loud, hostile crowd creating a mob-like atmosphere surrounding a hearing that should have been conducted confidentially. This would have been true of any woman participating in a hearing of this nature. Here, though, the level of impropriety and resulting damage was far greater as the Defendants were well-aware that Ms. Cash suffered from social anxiety yet did absolutely nothing to either respect or protect her fragile condition from the hostile hearing environment they each helped create and failed to remedy.

Given the totality of these alleged circumstances, and under the relevant caselaw, it is clear that the Complaint adequately alleges harassment severe and/or pervasive enough to create a hostile environment for Title IX purposes.

## Whether the conduct involved physical threats or humiliation

Given the fact that "MR" was attending Lees-McRea on a basketball scholarship, it is only reasonable to assume that he is physically imposing. He and at least one other male student initially accosted Ms. Cash on campus as she was walking from one building to another in search of an available bathroom. In addition to humiliating Ms. Cash with grossly offensive sexual taunts, "MR" and his friend(s) were certainly physically threatening in their superior size and numbers. Ms. Cash was put in such fear that she locked herself in the bathroom and remained there until she could reach her boyfriend by phone, and he could arrive to escort her home. Even then, MR and his companions continued to taunt and harass the escaping couple.

"MR" and others violated a no-contact order and even a judicial protective order no fewer than five times, following Ms. Cash around the campus and frightening her. These subsequent incidents of stalking and intimidating were unquestionably threatening and humiliating.

Ms. Cash was further humiliated at the hearing, where "MR's" mother harangued both Plaintiffs, and his supporters were allowed to create a hostile mob-like atmosphere. Instead of vindicating Ms. Cash's rights, Lees-McRea personnel allowed her to be traumatized once again, compounding the helplessness and humiliation she had already experienced.

Case 1:18-cv-00052-MR-DLH   Document 19   Filed 09/10/18   Page 21 of 35

### Whether the conduct interfered with Plaintiff's performance

Unquestionably, the alleged facts would establish that Ms. Cash's performance suffered from the sexual harassment and its aftermath. As the events unfolded, and Ms. Cash perceived that the College would do nothing to protect her from continued stalking and intimidation, she began to unravel. She could no longer function, remaining in her room hidden under her bed and missing classes. Ultimately, she left school and required intensive medical care. This impact on her performance is far more dramatic than the courts have required to establish a hostile environment and discriminatory impact.

### Psychological harm

The factor of psychological harm resulting from the harassment is also undeniable on the alleged facts, which indicate she has suffered severe and ongoing psychological harm from these events.

Prior to Ms. Cash had been successfully managing her social anxiety and thriving following her junior-year transfer to Lees-McRae. She was in good academic standing, while working part-time for the College, and making new friends. In the wake of the sexual harassment, stalking, and the College's insensitive mishandling of her complaint, however, she suffered a complete emotional breakdown resulting in her withdrawal from school, severe depression, and eventually, attempted suicide. A more dramatic case of psychological harm is difficult to imagine, and these facts far exceed the showing hostile environment

Case 1:18-cv-00052-MR-DLH   Document 19   Filed 09/10/18   Page 22 of 35

caselaw requires: Title IX's protections "come into play before the harassing conduct leads to a nervous breakdown," as the Supreme Court noted in *Harris*, 510 U.S. at 22. Here the allegations are clear that the harassing conduct and resulting mishandling of these matters by the Defendants didn't just precede a nervous breakdown, they CAUSED a nervous breakdown and attempted suicide.

The Magistrate erroneously concludes that these facts are insufficient to state a cause of action based on a hostile environment. In conclusory fashion,, and rather inexplicably, the Magistrate assert that "Plaintiffs have failed to allege that Defendant *College's actions were sufficiently severe or pervasive* to create a hostile or abusive environment." (Mag. Mem. at 20, emphasis added.) First of all, this formulation conflates the actions of those who harassed and intimidated Ms. Cash, with the College's mishandling of the situation, *both of which* combined to create the alleged hostile environment and either of which, individually, were sufficient to overcome a Rule 12(b)(6) Motion.

Additionally, beyond a conclusory assertion that the alleged facts are insufficient, nor does the Magistrate explain why repeated episodes over a period of two weeks, with a terrifying late-night verbal assault accompanied by physical intimidation, the latter continuing in defiance of multiple restraining orders, would not suffice under the caselaw. The Magistrate completely ignores the actual results of this hostile environment as "subjectively perceived" by Ms. Cash. She first secluded herself in her room, stopped attending classes, then withdrew from school, and ultimately attempted suicide. Patently,

Case 1:18-cv-00052-MR-DLH   Document 19   Filed 09/10/18   Page 23 of 35

Plaintiffs have alleged facts that would establish an environment so severe that it deprived her of "access to the educational opportunities or benefits provided by the school."

**B.** **The Complaint also alleges facts sufficient to establish the Defendants' liability under Title IX for deliberate indifference and disregard of Plaintiff's rights to an education free of discrimination and harassment.**

On the facts as alleged, Plaintiffs demonstrate ample basis – indeed, multiple bases – for holding the institution and its agents liable under Title IX. From the College's history of non-enforcement, to the failure to adequately train its personnel, to the wanton disregard of Plaintiff Cash's rights and needs in an increasingly distressing situation, the Defendants fell far short of fulfilling their responsibilities under Title IX.

In evaluating the deliberate indifference of the institutional Defendant, Lees-McRae College, the Complaint cites an historical record that should be front and center. For approximately 15 years, colleges like Lees-McRae have been obliged by Title IX regulations to report the incidence of sexual harassment and assault occurring on their campuses. As the public has been made very aware by recent media attention focused on the issue, sexual assault and harassment are endemic if not epidemic problems on college campuses. And yet, over a decade and a half, Lees-McRae has claimed zero (0) incidents of sexual misconduct in its required annual reports. (See Amended Complaint, ¶¶ 91-93.) Implausible on their face, these reports have been contradicted by several other former Lees-McRae students who have come forward, and have contacted Plaintiffs' counsel to report that their own

Case 1:18-cv-00052-MR-DLH   Document 19   Filed 09/10/18   Page 24 of 35

complaints of sexual harassment or assault on the Lees-McRae campus were ignored, deflected, or suppressed by the College's administration. (¶ 92.)

This institutional insensitivity and denial was manifested in Ms. Cash's experience, from the very start. Ms. Cash and her boyfriend first reported the incident within hours on April 11, 2017, to Defendant Gaisser, Assistant Dean of Students for Residential Life. Although campus and municipal police were contacted at that point, the College's responsibilities under Title IX go far beyond merely reporting incidents to law enforcement, and certainly extend to taking all reasonable and appropriate measures to ensure the student victim's physical and emotional safety.

Defendant Gaisser's response was instead woefully insensitive and inappropriate. Later on April 11, after Ms. Cash had spent time with her campus therapist for help coping with the incident, she met again with Defendant Gaisser. She was accompanied by her mother and a sexual assault advocate from Oasis, a local non-profit agency that assists victims of sexual misconduct. Gaisser had interviewed "MR" and the others, and attempted to characterize the incident as a simple "miscommunication." He had assembled "the boys" (an interesting phrase to use given that the young men were African-American) in a separate room, and proposed that Ms. Cash join them there and sit with them so "the boys" could apologize. Naturally, this was the last thing Ms. Cash had any desire to do, and both the

Case 1:18-cv-00052-MR-DLH   Document 19   Filed 09/10/18   Page 25 of 35

Oasis advocate and Ms. Cash's mother (Plaintiff Bayne) swiftly rejected this proposed "mediation" as contrary to appropriate sexual misconduct protocol. (¶¶ 42-43.) [1]

A few days later, Ms. Cash met with Defendant Merrill, who was both the College's Title IX Coordinator, and its Director of Athletic Compliance, and filed a formal Title IX complaint against "MR." The College then issued a no-contact order prohibiting "MR" and the others from having any contact with Ms. Cash. (¶¶ 44-45.)

However, within 48 hours of the no-contact order, "MR" and his crew retaliated by stalking, following, and menacing Ms. Cash *in three separate incidents*, as she took meals in the dining hall and walked across campus. The following morning, Ms. Cash reported to Defendants Merrill, Driggers, and others that "MR" was violating the no-contact order, and was frightening her. Dean of Students Driggers in particular was well aware of Ms. Cash's struggles with social anxiety and her need for special care and accommodation. Yet, the Defendants did nothing to protect Ms. Cash and to prevent "MR" from intimidating her, as both College and Title IX regulations required. (¶¶ 46-47.) To her knowledge they conducted no meaningful investigation, nor did they take any reasonable steps to protect her, such as excluding "MR" from campus, as common sense would dictate.

---

[1] It must be noted that at that time, the Lees McRae was under a federal directive contained in the 2011 Dear Colleague Letter sent to all Title IX institutions setting forth that no institution was to use mediation in any form, even if voluntary and/or agreed to between the abuser and victim, to resolve sexual misconduct claims.

Case 1:18-cv-00052-MR-DLH   Document 19   Filed 09/10/18   Page 26 of 35

Feeling helpless and isolated, Ms. Cash began showing signs of an emotional breakdown, confining herself to her dorm room to avoid further encounters with "MR," and hiding under her bed to sleep. Her mother did convince her to obtain a protective order from the local court, which Ms. Cash did, but should not have had to do, on or about April 21. (¶ 48.)

Undeterred by the court order, "MR" and others again violated the no-contact and protective orders, in repeated incidents of following and menacing Ms. Cash. She reported these violations to Defendant Driggers, who again did nothing. (¶ 50.)

The Title IX disciplinary hearing was set for April 25, 2017. It could hardly have been conducted more inappropriately. Dean of Students Driggers, who of all the Defendants was most familiar with Ms. Cash and her social anxiety struggles, convened a hearing panel comprised of College personnel who had conflicts or interest and were otherwise unsuitable to the task. Over Ms. Cash's objections, Meredith Tillman was included as a hearing panel member, despite being a friend of MR and the others accused of harassment, and having conferred with them about the allegations. Defendant Merrill was not eligible under Title IX protocol to hear the case, and in any event had a conflict of interest given his role in the Athletics Department. Panelist Andrew Taylor, an adjunct faculty member, made loud, sexually offensive statements during a break, within Ms. Cash's and her mother's hearing, including his comment that "all I need for a good weekend is liquor and loose women," indicating his level of sensitivity and the gravity with which he approached the hearing.

Defendant Gaisser had already decided that the harassment was merely a matter of "miscommunication." In short, it was a panel stacked to exonerate "MR" and the others, and it did so. (¶¶ 51, 52, 56, 57, 59.)

As if this process and its result were not traumatizing enough, the Defendants allowed the supposedly confidential hearing to be dominated by a hostile crowd of "MR's" friends and supporters. "MR's" mother was allowed to speak at the hearing, although Ms. Cash's mother was told she could not speak and that if she did she would be removed from the hearing – a rule not applied to "MR's" mother. "MR's" mother was also allowed to directly and personally harangue both Ms. Cash and Ms. Bayne. Throughout the hearing, Plaintiffs were subjected to the jeers and cheers of "MR's" supporters.

It is plain from the alleged facts that the College's personnel were poorly trained and ill-equipped to comply with the requirements of Title IX. Nor does it appear from the facts alleged that the Defendants were willing to vindicate Ms. Cash's rights by disciplining a promising student athlete. They handled the report of sexual harassment with insensitivity and indifference from the start, attempting to characterize it as "miscommunication." They did nothing when "MR" terrorized Ms. Cash in violation of two protective orders. And finally, they convened a tribunal predisposed – if not guaranteed -- to rule in "MR's" favor, and dominated by a mob of his supporters, when the hearing should have been discreet and confidential.

The Magistrate draws two erroneous conclusions from these facts. First, The Magistrate concludes that the Defendants "took timely measures to end the harassment." (Mag. Mem. at 19-20.) The Magistrate relies upon two isolated facts: that Defendant Gaisser contacted law enforcement, and that the College responded to Ms. Cash's formal Title IX complaint by issuing a no-contact order.

The Magistrate holds Defendants to far too low a standard, and ignores key facts demonstrating their indifference and insensitivity. Title IX requires not just "timely" but also *appropriate* responses. Merely contacting law enforcement does not suffice to satisfy the College's responsibilities to create a safe environment. Indeed, as he was contacting law enforcement, Defendant Gaisser was also attempting to convince Ms. Cash that the terrifying encounter involving vile sexual taunts and physical intimidation was a matter of "miscommunication." He also attempted to expose her to unwanted contact with her tormentors, so they could "apologize," an inappropriate response contravening all protocols for handling sexual harassment complaints and contrary to federal Title IX mandates issued in the Dear Colleague letters.

The Magistrate also glosses over the fact that the Defendants did *nothing* to enforce the no-contact order. They did not exclude "MR" from campus even after *five* reported incidents of his violating both the no-contact order *and* a judicial protective order Ms. Cash had to obtain as the harassment continued. No enforcement and/or repercussions were made or issued by the Defendants to or against "MR" or the others involved for these violations.

Page 23 of 29

Second, the Magistrate dismisses as irrelevant the allegations regarding Defendants' mishandling if not outright sabotage of the sexual harassment hearing. These facts do not amount to mere "laxity . . . in investigating an incident." (Mag. Mem. at 21.) On the contrary, both the composition of the hearing panel, and the manner in which Defendants conducted the hearing were so inappropriate and violative of all Title IX norms as to become part and parcel of the hostile environment Ms. Cash experienced. Additionally, the hearing was managed in a manner that was completely contrary to the requirements of the ADA given Ms. Cash's social anxiety, the Defendants' knowledge of same, and the the likely, if not certain, negative impact such a poorly constructed and conducted hearing would have on her.

In addition, the Magistrate ignores the alleged and demonstrable history of Lees-McRae's noncompliance with Title IX in sexual harassment matters. And oddly, elsewhere the Magistrate concludes that Plaintiffs have adequately alleged "reckless indifference" toward Ms. Cash's welfare. (Mag. Mem. at 33-34.)

The facts as alleged more than adequately state a claim based on the Defendants' deliberate indifference to Plaintiff Cash's rights and their duties under Title IX.

**II.**    **Plaintiffs have also alleged facts that would establish state law causes of action.**

**A.**    **Breach of Contract**

The facts as alleged in the Complaint would support a number of contract theories for recovery, based on any number of express and implied contractual warranties.

For example, the Complaint details that in her search for an appropriate college, Plaintiff Cash emphasized her needs for a safe, supportive environment due to her struggle with diagnosed social anxiety; the Defendants were not only aware of her special concerns, but assured her that Lees-McRae would afford her just such an environment. Of course, both the College's history of deflecting all sexual harassment incidents, and subsequent events, belied the representations that Lees-McRae offered a safe environment. Ms. Cash crucially relied on those representations, which addressed a paramount consideration in her decision to enroll at the College. At a minimum, these facts would support a contract theory of constructive fraud, negligent misrepresentation, and/or fraud in the inducement. *See, e.g., Media Network, Inc., v. Long Haymes Carr, Inc.*, 197 N.C.App. 433, 453-454, 678 S.E.2d 671, 684-685 (2009); *Rowan County Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 418 S.E.2d 648 (1992).

The Magistrate would dismiss this count because it does not allege the breach of any specific terms of express or implied contracts. (Mag. Mem. at 23.) As noted above and as supported by incorporated allegations throughout the complaint, Defendant Lees-McRae

made many express and implied promises that induced Ms. Cash to enroll, and they breached those promises. Plaintiff have stated a cause of action for breach of contract.

## B.  Negligence

As the Magistrate notes, a claim of tortious negligence based on North Carolina common law requires allegations that would establish four elements: 1) legal duty, 2) breach of duty, 3) actual and proximate causation, and 4) injury. *Petty v. Cranston Print Works*, 90 S.E.2d 717, 721 (N.C. 1956). The Magistrate concludes that the Defendants had "no special duty of care with respect to Plaintiff Cash," and that lacking such duty, the Defendants are not sufficiently alleged to have failed in the "duty to use ordinary care to protect others from harm."  (Mag. Mem. at 28.)

On the contrary, Plaintiffs have alleged that Defendants did in fact breach their statutory duties under both Title IX and, in the Amended Complaint, under the Americans with Disabilities Act. These are not mere "regulations," but acts of Congress creating clear, particular duties. Unless one concludes that Plaintiff Cash's causes of action under those statutes fail, she has alleged a special duty, and Defendants' breach thereof.

The Magistrate would further conclude that because Plaintiff Cash's stated cause of action consists of "threadbare recitals" and "has failed to do more than list the elements of her negligence and gross negligence claims, she has failed to plausibly state a claim." (*Id.*) This rather odd assertion ignores that ***each cause of action incorporates by reference every***

Case 1:18-cv-00052-MR-DLH   Document 19   Filed 09/10/18   Page 32 of 35

***factual allegation of the complaint***.  Plaintiffs have throughout the complaint alleged detailed facts with regard to the Defendants' negligent and grossly negligent handling of Ms. Cash's situation. Those facts, further showing that Defendants' negligence proximately caused Ms. Cash's injuries including complete emotional breakdown and a suicide attempt, speak for themselves.

### C.  Negligent infliction of emotional distress

Finally, both Plaintiffs have stated a cause of action for negligent infliction of emotional distress.  Under North Carolina law, this cause of action requires a showing that 1) the defendant negligently engaged in conduct, 2) where it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and 3) the conduct did in fact cause the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics*, 395 S.E.2d 85, 97 (N.C. 1990).

As the Magistrate correctly concluded, the cause of action for infliction of emotional distress applies to both Plaintiffs.  However, the Magistrate again concludes that they "summarily allege the elements" of the tort, and that "formulaic recitation of the elements" is not sufficient to survive a motion to dismiss. (Mag. Mem. at 35) This assertion again ignores that ***each count incorporates all allegations of the complaint***, which contains ample detailed facts supporting each elements.  Taking the allegations as true, the Defendants engaged in negligent and grossly negligent conduct; they knew of Ms. Cash's social anxiety and thus clearly should have foreseen the severe emotional distress they did in fact cause.

Finally, the Magistrate would dismiss Ms. Bayne's cause of action based on the failure to specifically allege that she was subjected to "severe emotional distress." (Mag. Mem. at 32.) Contrary to this finding, the facts alleged strongly support that the plaintiffs suffered severe emotional distress. Both the original and amended complaints contain multiple allegations of severe emotional distress; the amended complaint further clarifies that both Plaintiffs allege severe emotional distress, as would be the natural consequence of Ms. Cash's suicide attempt and her mother's intervention in the nick of time. It is virtually res ipsa loquitur – that Ms. Cash attempted suicide is not something that would occur under these facts unless she was experiencing severe emotional distress and which Plaintiffs claim was a direct and proximate result of the actions and/or omissions of the Defendants.

## Conclusion

For all the foregoing reasons, this Court should conduct a de novo review of this matter, decline to accept the Magistrate's Recommendations, deny the Defendants' motion to dismiss and Order that this matter move forward with discovery.

Respectfully submitted this 10th day of September, 2018.

/s/

_____

SUTTON & LINDSAY, PLLC

Stephen P. Lindsay
46 Haywood Street
Suite 200
Asheville, NC 28801
828-551-6446
spl@suttonlindsay.com
NC Bar: 13017

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of these Objections to Magistrate's Recommendation on counsel for the opposing party through the CM/ECF Pacer filing system.

This the 10th day of September, 2018.

/s/ Stephen P. Lindsay

_____

Stephen P. Lindsay